VIOLET FLORENCE HARTMAN et al., Appellants, v. OSCAR HARTMAN et al.

In Banc, May 21, 1926.

1. **WILL CONTEST: Incapacity: Contradictory Evidence: Directed Verdict.**  Where there was substantial evidence that testator was of unsound mind and suffering from senile dementia for some time before the execution of his will and until his death, and on the other hand the testimony for the proponents was to the effect that he was entirely competent mentally at the time the will was executed and retained his faculties until his death, the trial court did not err in refusing to instruct the jury that the proposed will was not the last will of the testator.

314 Mo.—20.

Hartman v. Hartman.

2. ———: ———: ———: **Failure of Beneficiaries to Testify: Directed Verdict.** The failure of the proponents of a will, assailed on the ground that testator did not have testamentary capacity, to call as witnesses the beneficiaries, especially those with whom he lived when he made it, will warrant the jury in drawing an inference that their testimony on the issue would have been unfavorable to proponents, but it will not warrant the court in so instructing the jury. Such an inference is one of fact, and not one of law, and such an instruction would be a comment on the evidence.

3. ———:. **Testamentary Capacity: Instruction: Sound Mind: Belittling Meaning.** An instruction for proponents, where the will is assailed for lack of testamentary capacity, telling the jury that "if at the time testator executed his last will, he was of sound mind, then your verdict will be in favor of defendants and you should uphold said will" and that "by 'sound mind' is meant no more than that testator, at the very time the will was executed by him, understood the ordinary affairs of his life, the general nature and extent of his property, the persons who were the natural objects of his bounty and the disposition he was making of his property," is misleading; it belittles and dwarfs the importance of the issues, and its use of the words "no more" helps to belittle them; it does not require that the testator should have testamentary capacity to know the number and names of the natural objects of his bounty, their deserts with reference to their conduct towards and treatment of him, their capacities and necessities—things properly required under the evidence to be found by an instruction given for contestants—and the giving of it was reversible error.

4. ———: ———: ———: **Old Age: Comment: Minimizing Issue.** An instruction telling the jury that "neither old age, nor imperfect or failing memory caused by sickness or old age, is sufficient to justify a finding that testator was of unsound mind," is not only a comment on the evidence, but where there is substantial evidence of senile dementia and that testator failed to recognize nephews with whom he was well acquainted and to whom his will gave nothing, it minimizes such evidence and the issue of testamentary capacity.

5. ———: ———: ———: **Right to Dispose of Property.** An instruction telling the jury that the testator "had the right, under the law, to dispose of his property by will as he saw fit, and in the manner he did dispose of it, no matter how unfair such disposition may appear to the jury, if it does so appear," and that "in a case like this, the jury have no right to pass upon the propriety, wisdom, or justice of the provisions of the will, but these questions can only be considered by you insofar as they throw light (if any) upon the

question whether the testator was of sound mind at the time of executing the will," is reversible error.

Corpus Juris-Cyc. References: Trial, 38 Cyc., p. 1518, n. 69; p. 1648, n. 27; p. 1649, n. 43; p. 1657, n. 47; p. 1659, n. 54; p. 1661, n. 59; p. 1672, n. 24, 33; p. 1743, n. 22; p. 1744, n. 25; p. 1782, n. 82. Wills, 40 Cyc., p. 1004, n. 3, 4; p. 1008, n. 16, 19; p. 1321, n. 68; p. 1334, n. 66; p. 1338, n. 91.

Appeal from Andrew Circuit Court.—*Hon. Guy B. Park,* Judge.

REVERSED AND REMANDED.

*G. C. Sparks, Duvall & Boyd* and *Miles Elliott* for appellants.

(1)   The court erred in not granting plaintiffs a new trial, because there was no substantial evidence to support the verdict.   Knapp v. Trust Co., 199 Mo. 660; Dunkeson v. Williams, 242 S. W. 658; Bryant v. Lazarus, 235 Mo. 606; Kame v. Railroad, 254 Mo. 175; Roberts v. Bartlett, 190 Mo. 695.   (2)   The court erred in giving respondents' Instruction B, because:   (a)   It does not require as a requisite to testamentary capacity that testator know the number and names of the natural objects of his bounty, their deserts with reference to their conduct toward and treatment of him, their capacities and necessities.   Ray v. Walker, 293 Mo. 447; Byrne v. Fulkerson, 254 Mo. 120; Crum v. Crum, 231 Mo. 638; Holton v. Cochran, 208 Mo. 314; Meier v. Buchter, 197 Mo. 68. (b)   It is in sharp conflict with appellants' Instruction 1.   One of them is wrong.   Appellants' Instruction 1 correctly states the law.   Authorities last above.   (c) In its concluding paragraph it told the jury that, "neither old age nor imperfect or failing memory caused by sickness or old age, is sufficient to justify a finding that the testator was of unsound mind," etc.   It improperly minimized, if it did not wholly destroy, the testimony of mental incapacity, and was an improper comment on the evidence.   Post v. Bailey, 254 S. W. 71.   (3)   Respond-

ents' Instruction C was erroneous because it told the jury they had "no right to pass upon the propriety, wisdom or justness of the provisions of the will." Everly v. Everly, 297 Mo. 196; Dunkeson v. Williams, 242 S. W. 658; Meier v. Buchter, 197 Mo. 68.

*Booher & Williams* and *Shinabarger, Blagg & Ellison* for respondents.

(1) The definition of "sound mind" or testamentary capacity in respondents' Instruction B was correct. Rose v. Rose, 249 S. W. 605; Spencer v. Spencer, 221 S. W. 58; Messick v. Warren, 217 S. W. 94; Platte v. Platte, 290 Mo. 686; Nook v. Zuck, 289 Mo. 24; Sanford v. Holland, 276 Mo. 457; Hahn v. Hammerstein, 272 Mo. 248; Crum v. Crum, 231 Mo. 621; Turner v. Anderson, 236 Mo. 523; Naylor v. McRuer, 248 Mo. 423; Bensberg v. Washington University, 251 Mo. 641; Byrne v. Fulkerson, 254 Mo. 97; Pritchard v. Thomas, 192 S. W. 956; Ray v. Walker, 293 Mo. 447; Dunkeson v. Williams, 242 S. W. 653; Major v. Kidd, 261 Mo. 607; Riggin v. Westminster College, 160 Mo. 570; Holton v. Cochran, 208 Mo. 314; Knapp v. Trust Co., 199 Mo. 640; Harvey v. Sullens, 56 Mo. 372; Andrews v. Linebaugh, 260 Mo. 623; Couch v. Gentry, 113 Mo. 248. (2) Respondents' Instruction B was not erroneous because of its cautionary reference to testamentary disqualification by old age. Post v. Bailey, 254 S. W. 74; Messick v. Warren, 217 S. W. 94; Hahn v. Hammerstein, 272 Mo. 248; Bensberg v. Washington University, 251 Mo. 641; Gibony v. Foster, 230 Mo. 106; Winn v. Grier, 217 Mo. 420; Southworth v. Southworth, 173 Mo. 59; McNealey v. Murdock, 293 Mo. 16; Andrews v. Linebaugh, 260 Mo. 623; 5 Randall on Instructions, sec. 527; Hanrahan v. O'Toole, 139 Iowa, 229; American Bible Society v. Price, 115 Ill. 623. (3) Respondents' Instruction C was not erroneous because it told the jury they had no right to pass upon the justness of the will. Everly v. Everly, 297 Mo. 196; Meier v. Buchter, 197 Mo. 68; Turner v. Anderson, 260 Mo. 1;

Ray v. Walker, 293 Mo. 447; Dunkeson v. Williams, 242 S. W. 653; McNealey v. Murdock, 293 Mo. 16; 40 Cyc. 1337. (4) There was substantial evidence to support the verdict. Turner v. Anderson, 260 Mo. 1.

HIGBEE, C.—This is an action to contest the will of Leander J. Hartman, who died, testate, September 24, 1922, on the grounds of testamentary incapacity and undue influence. The court took the case from the jury on the issue of undue influence, and submitted it on the issue of testamentary incapacity. The jury by their verdict found for the proponents of the will and the plaintiffs appealed.

The testator, Leander J. Hartman, familiarly known as Lank Hartman, was a bachelor. His will was written on February 8, 1922; he died September 24, 1922, aged seventy. He devised his estate to his sisters, Lucy J. Davis and Ann Catherine Kelley, and his brothers, Oscar and Charles G. Hartman, "in equal shares and nothing to my brother James D. Hartman." No provision was made for the children of his deceased brothers, William R., John W., and George P. Hartman. The brother and nephews and nieces thus cut off (some of them being minors) are the contestants; the beneficiaries in the will are the defendants. During the years of his activity, the testator conducted a truck farm and nursery on a seventeen-acre tract of land near St. Joseph, Missouri, where he lived and "bached" about twenty years. In his later years he developed Bright's disease and, in August, 1920, blood poison set in in an injured foot, for which he was treated in a hospital, and one of his toes was removed. After this, his brother James D. Hartman and his wife lived with Leander or Leander with them, and cared for him, until December, 1921, when he went to his sister, Mrs. Davis, in Andrew County, and lived with her until his death. He had a sale of his personal effects in October, 1920.

The evidence for the contestants is that during the last two years of his life, the testator became slovenly

and filthy in his habits; he had poor control over his bowels and urine; had delusions about people trying to break into his room at night; slept with a revolver under his pillow and a shot gun by his bed; he would frequently fall asleep in the daytime; that at times he did not recognize some of his nephews with whom he was well acquainted; that he inquired and wrote down the names of his nephews and nieces, saying he intended to make a will and make an equal distribution of his property; that he was affectionately disposed towards all his kindred; there was substantial testimony that the testator was of unsound mind and suffering from *senile dementia* for some time before the execution of the will and until his death. On the other hand, the evidence for the proponents of the will is that the testator was entirely competent mentally at the time the will was executed and that he retained his faculties until his death. The testator told one witness that while he was living with his brother, James D. Hartman, he went away on a trip, leaving his papers, and that on his return two notes he held on his brother James, one for $1500 and one for $1700, were missing, and that he told James unless he produced those notes or made a new note he would disinherit him, and that James signed a new note, but his wife would not sign it. The beneficiaries under the will, including Mrs. Davis, with whom the testator lived at the time the will was made and until his death, did not testify.

I. The first assignment of error is that the trial court erred in not instructing the jury that the proposed will was not the last will of the testator. There was ample evidence that the testator's mental faculties were alert and normal, not only at the time he executed the will, but for a long time before and after its execution. It may be true that the witnesses for the proponents were not as intimately acquainted with the testator as the witnesses for the contestants were. The court could not assume in its instructions

*Directed Verdict.*

that the testimony for or against the will was true; that was a question for the jury. Again, it is insisted that the failure of the proponents to call as witnesses the beneficiaries, especially, Mrs. Davis, with whom the testator·lived when he made the will, raised an inference that their testimony on the issue of testamentary capacity would be unfavorable to the proponents. The failure to call· these witnesses would warrant the jury in drawing such an inference (Dunkeson v. Williams, 242 S. W. 653, 657-659, and cases cited), but would not warrant the court in so instructing the jury; such an instruction would be a comment on the evidence; it is an inference of fact, not of law. [State v. Swarens, 294 Mo. 139, 241 S. W. 934; State v. Tracy, 294 Mo. 372, 387, 243 S. W. 173.] The issue of testamentary capacity was, on the evidence, a question for the jury. [Knapp v. St. Louis Trust Co., 199 Mo. 640, 660, 98 S. W. 70; Dunkeson v. Williams, supra.]

II.    It is insisted the court erred in giving instructions for the proponents of the will.

The court gave instructions numbered 1 and 2 for the plaintiff, and Instructions A, B and C for the proponents.

"1.    The court instructs the jury that the burden is upon the defendants to prove by the preponderance, or greater weight of the evidence that at the time he signed the paper-writing offered in evidence, Leander J. Hartman was of sound and disposing mind and memory, that is to say, that the said Leander J. Hartman had sufficient mind and memory:

*Instructions.*

"1st: To understand the ordinary affairs of life, and,

"2nd: To understand the nature, extent, and value of his property, and,

"3rd: To understand the number and names of the persons who were the natural objects of his bounty, and,

"4th: To understand their deserts with reference to their conduct toward, and treatment of him, their capacity and necessities, and,

"5th: To recall or comprehend what he had done, if anything, for the natural objects of his bounty, and the obligations if any, he morally owed them, and,

"6th: Had sufficient active memory to retain all these facts in his mind long enough to have a will prepared.

"And unless defendants have proved by the preponderance, or greater weight of the evidence, that the said Leander J. Hartman had such a mind and memory at the time he signed the alleged will, you should find that the same is not his will, and return your verdict accordingly.

"2. The court instructs the jury that in determining the issue of whether or not the said Leander J. Hartman was of sufficient mental capacity to make a valid will at the time he signed the paper-writing offered in evidence, you may take into consideration the instrument itself, and all its provisions, in connection with all the other facts and circumstances in evidence.

"A. The court instructs the jury that the issue made and submitted to the jury for its determination in this case is:

"Whether the paper-writing produced in evidence as the will of Leander J. Hartman, deceased, dated February 8, 1922, is or is not the last will and testament of said deceased.

"B. You are instructed that if at the time the testator, Leander J. Hartman, deceased, executed his last will, he was of sound mind, then your verdict will be in favor of the defendants, and you should uphold said will on the question of said testator's mental capacity.

"By 'sound mind,' as used in this instruction, is meant no more than that the testator at the very time the will was executed by him, understood the ordinary affairs of his life, the general nature and extent of his property,

the persons who were the natural objects of his bounty, and the disposition he was making of his property.

"Neither old age, nor imperfect or failing memory caused by sickness or old age, is sufficient to justify a finding that the testator was of unsound mind, if, at the time he executed the will, the testator had sufficient mind and intelligence to meet the requirements above set out.

"C. You are instructed that the testator, Leander J. Hartman, had the right, under the law, to dispose of his property by will as he saw fit, and in the manner that he did dispose of it, no matter how unfair such disposition may appear to the jury, if it does so appear. In a case like this, the jury have no right to pass upon the propriety, wisdom, or justness of the provisions of the will. But these questions can only be considered by you insofar as they may throw light (if any) upon the question as to whether the testator was of sound mind at the time of the execution of said will."

Instruction B is misleading; it belittles and dwarfs the importance of the issues; it reads, that by sound mind is meant *no more* than that the testator understood the ordinary affairs of life, etc. It does not require that the testator should have testamentary capacity to know the number and names of the natural objects of his bounty, *their deserts with reference to their conduct toward and treatment of him, their capacity and necessities,* while Instruction 1 (clauses 3-6) required the jury to so find as a condition precedent to finding a verdict for the proponents. Which instruction did the jury follow?

In Byrne v. Fulkerson, 254 Mo. 97, 120, 162 S. W. l. c. 178, the court said:

"II. With respect to the test to be applied in determining testamentary capacity this court recently said: 'To have mind and memory enough to make a will, testator should be able at the time to understand the ordinary affairs of life, the value and extent of his property, the number and names of the persons who were the natural objects of his bounty, their deserts with ref-

erence to their conduct and treatment of him, their capacity and necessities. He should have active memory enough to retain all these facts in his mind, without the aid of others, long enough to have his will made. Otherwise the law takes from him power to dispose of his property by will. A mind not coming up to that standard is not a testamentary one. [Crum v. Crum, 231 Mo. l. c. 638 et seq. and cases cited; Holton v. Cochran, 208 Mo. 314; Roberts v. Bartlett, 190 Mo. l. c. 699; Meier v. Buchter, 197 Mo. 68.]' "

The foregoing excerpt is quoted approvingly in Ray v. Walker, 293 Mo. 447, 464, 240 S. W. 187, 193. The court erred in giving Instruction B.

III. Instruction B is a comment on the evidence in telling the jury that "neither old age nor imperfect or failing memory caused by sickness or old age is sufficient to justify a finding that the testator was of unsound mind," etc. A similar instruction was condemned in an opinion by RAGLAND, J., in Post v. Bailey, 254 S. W. 71, 74, where the learned judge said:

"This is a correct statement of an abstract rule of law. As embodied in the instruction, however, its effect was to minimize, if not wholly destroy, the effect of plaintiff's evidence. The issue as submitted under plaintiff's principal instruction was whether the testator 'had sufficient understanding to comprehend the nature of the transaction that he was engaged in, the value and extent of his property, the number and names of the persons who were the natural objects of his bounty, and their deserts with reference to their conduct and treatment of him, and had active mind and memory enough to retain all such facts in his mind without the aid of others.' Now practically all the evidence offered by plaintiff for the purpose of showing that the testator did not have such a mind and memory dealt in some way with his 'old age, physical weakness or imperfect memory caused by sickness or old age, etc.' Yet the court told the jury in effect that all of these things signified nothing."

We are of the opinion the court also erred in giving Instruction C. It is essentially the same as Instruction 2-D condemned in an opinion by WHITE, J., in Everly v. Everly, 297 Mo. 196, 209, 249 S. W. 88, 91, and for the reasons there assigned we hold the giving of this instruction was reversible error.

The judgment is therefore reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., in Division Two is adopted as the opinion of the Court in Banc. *Blair, C. J., Ragland, Atwood, Graves* and *Otto, JJ.,* concur; *White, J.,* concurs in the result; *Walker, J.,* dissents.