MABLE SMITH, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE CO., APPELLANT.—56 S. W. (2d) 838.

Kansas City Court of Appeals.   February 6, 1933.

*James R. Sullivan* and *Chas. N. Sadler* for respondent.

*Watson, Ess, Groner, Barnett & Whittaker* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $3500 and defendant has appealed.

The facts show that on the 8th day of January, 1929, plaintiff was alighting from one of the street cars of defendant when she slipped on the icy step of the car causing her to fall, to her injury. Plaintiff, her brother and her husband had attended a theatre in the downtown district of Kansas City. At about eleven P. M. on the day in question at 12th and McGee Streets, in said city, they boarded the street car

in question and became passengers thereon intending to go home. When the party reached 38th and Summit Streets plaintiff signaled to the operator of the car to stop so that they might alight. It was at this point that she fell. The fall occurred about eighteen to thirty minutes after they boarded the car.

The car in question is what is called a "one man" car. The operator acts both as motorman and as conductor. He stands in the front vestibule of the car, collects fares, opens and closes the outside vestibule doors and looks, generally, after the operation of the car. The passengers board and alight from the front vestibule where the operator is situated. The front vestibule is divided by horizontal and vertical iron rods separating the space so that passengers intending to board the car go in front of the rods and those intending to alight go between the body of the car proper and the rods. However, passengers frequently board and leave the car indiscriminately through its entrance and exit-ways. The outside opening of the vestibule is covered by a set of folding doors, the opening and closing of which is controlled by the operator of the car with the aid of compressed air. When the doors are closed the step, which runs along the entire width of the opening, is folded up against the car.

The evidence shows that no snow fell on the day in question but that there was snow upon the ground; that there had been thawing temperature during the day and the streets were "sloppy through the middle of the day." It started to freeze after night came on.

Plaintiff's brother, Prather, did not testify. Her husband testified to the effect that he did not pay any attention to whether there was ice upon he step when they boarded the car. Plaintiff testified that she did not notice any. However, when plaintiff fell her husband noticed that the step was "covered with slick ice." Her foot slipped from under her and the back of her head struck the step. She was assisted to her feet by her husband and Prather, who saw her fall. There was testimony that "numerous" people boarded the car and others alighted therefrom during the eighteen to thirty minutes that transpired prior to plaintiff's fall.

The car was taken out of the barn by the operator at 4:40 P. M. and he returned it at 1:45 A. M. the next morning. He was put upon the stand by the defendant but was not asked as to the condition of the step. He testified that plaintiff did not fall upon the step but alighted therefrom, took one step and was taking another when she slipped upon the snow or ice on the street and fell; that there was nothing to obstruct his view and that he watched her from the time she came out of the car into the vestibule until she fell. The operator of the car upon cross-examination was very positive that he saw the entire happening. He also gave testimony in this connection which would indicate that he saw the step of this car each time a passenger alighted. This testimony is as follows:

"Q. (By Mr. Sadler) Is it your habit and practice as you go along downtown to watch everybody that gets off at the exit-way and see whether they take hold with their hand or not when they get off? A. Well, I watch them as they get off.

"Q. Isn't it a fact that when you open the door and you know that there is some people to get off that you don't pay any attention to them, you just watch to see when they get off? A. No.

"Q. You watch each person to see how they get off, do you? A. I watch their step as they come down.

"Q. You watch their step as they come down? A. Yes.

"Q. And you watch to see whether or not they take hold of anything, or not, each person that gets off of your car. That is correct, is it? A. Well, I wouldn't say that I watched to see they took hold every time particular.

"Q. Why, of course you don't. There wouldn't be any reason for watching that, would there? A. I watch their feet.

"Q. You watch their feet? A. Just by looking at them you can observe the whole thing as they step down.

"Q. From your position you can't see their feet unless you turn clear around, can you? A. Why, no.

"Q. You mean to tell the jury when you stop to let people get off of the car that you turn clear around and watch those people's feet as they get off? A. Why, I certainly do.

"Q. You want the jury to understand you do that all of the time? A. I absolutely do. I turn around and watch the people."

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that there is nothing in the record from which the jury could conclude that the defendant knew, or by the exercise of the highest degree of care, could have known of the icy condition of the step, in time to have remedied the situation. In fact, defendant claims that there is no testimony, or inference to be drawn from the testimony, that defendant or its agents had any knowledge whatever of the condition of the step prior to plaintiff's fall.

We think there is ample in the testimony from which the jury could have drawn the inference that defendant did have knowledge of said condition in time to have remedied it. Defendant admits that there is evidence showing that there existed a condition of a sheet of ice upon the entire step. Defendant's theory as to how the ice came upon the step is that it probably formed during the trip after plaintiff boarded the car and that it was caused by moisture being deposited on the step from the passengers' feet. For the purposes of the case we may accept defendant's theory concerning this matter. Plaintiff does not appear to seriously challenge defendant's contention that there was no ice upon the step prior to the time that plaintiff boarded the car, it being apparently conceded that, when plaintiff

said she did not notice any ice upon the step at that time, she meant that she looked and saw none, rather than that she took no note of the situation.

However, it took some appreciable length of time for passengers to track moisture upon the step and for it to freeze. That it was not frozen lightly on the step is manifest from the fact that it adhered to the step after the latter was folded up and during the process of folding and unfolding. Defendant and its agent, the operator of the car, were required to use the highest degree of care in order to prevent this condition remaining, if they could not have prevented it in the first place. They must be held to have anticipated just what occurred in this instance, the tracking of moisture and its freezing upon the step. [Bate v. Harvey, 195 S. W. 571.] In fact the operator of the car testified:

"Q. Now, when people get on and off a step when there is wet snow on the ground you have seen them track snow up on, stick on the steps, haven't you? A. Yes."

The operator of the car is charged with knowledge of the fact that moisture will freeze in freezing temperature.

Defendant insists that the operator of the car did not testify that he could see the step of the car from where he was located; that he meant to say that he merely saw passengers in the act of stepping as they alighted from the car. While the operator of the car did not say, in so many words, that he saw the step as passengers alighted, he did say that he observed passengers when they were alighting; that he watched their feet and observed "the whole thing as they stepped down." The jury from this testimony, could well arrive at the conclusion that he did see the step on these occasions and that he saw it as each of the many passengers alighted during the course of the trip in question. The jury, as reasonable men, could also arrive at the conclusion that the moisture did not get upon the step and freeze tightly there in merely a few seconds of time, but that it required sometime for this condition to be brought about and that the operator of the car must have seen the ice upon the step when some of the other passengers boarded the car or alighted from it. The jury could also find that it would have required but an instant of time on the part of the operator, after he discovered the condition, to have remedied it. [Craig v. United Rys., 175 Mo. App. 616, 625, 626; Bate v. Harvey, supra; Taylor v. Mo. Pac., 311 Mo. 605, 617, 618.]

There is another very potent circumstance which was for the attention of the jury in connection with this matter though, no doubt, the jury could not have fixed liability upon the defendant on account of this circumstance, alone. The operator of the car is presumed to have been under defendant's control. He was its employee and it placed him upon the stand but failed to inquire of the witness whether he observed any ice upon the step at any time. This was an important

factor in the case and we would expect to have found that defendant had inquired into it. Neither side interrogated the witness in reference to the matter and the jury was without the benefit of the operator's knowledge or lack of knowledge of the conditions.

Complaint is made of the giving of plaintiff's instruction No. 2, which covered the entire case and directed a verdict. The only part of the instruction which directed the jury to find that defendant had knowledge of the condition of the step in time to have remedied the situation prior to plaintiff's fall thereon, is the following: "and if you further find and believe from the evidence that defendant, its agents and servants, carelessly and negligently caused, allowed or permitted the step on said car to become slick and dangerous." However, we might say that plaintiff's Instruction 3 defines the term "negligent" as applied to the operator of the car in question, as "failure to exercise the highest practical degree of care," and the term "highest practical degree of care," is defined as "such care as a very prudent person engaged in the same business would exercise under the same or similar circumstances."

It is claimed by defendant that plaintiff's instruction No. 2 is erroneous for the reason that it "wholly omits all reference to defendant's knowledge, actual or constructive, of the condition of the step and does not require the jury to find that defendant knew, or could have known of its condition."

The instruction certainly does not in terms have the jury find that defendant knew, actually or constructively, of the condition of the step; but we think that if it does not, standing alone, at least in connection with plaintiff's instruction No. 3, it does, in effect, have the jury find this matter, although its meaning is rather obscure. Webster defines the word "caused" to mean "to bring about; to make; to bring into existence." He defines "allowed" to mean "to place; to put into service; to assign; to permit; to consent too," and "permitted" to mean "to let through; to allow; to let go; send; to tolerate; put up with." The weakest of these three words perhaps is the term "permitted," but even that word conveys the idea of fault on the part of the actor. And this is especially true in view of the fact that the instruction says that defendant must have "carelessly" and "negligently" permitted the slick condition of the step, with the term "negligent" defined in another instruction (3). In other words the term "permitted" conveys the idea to the jury that, in order for plaintiff to recover, defendant or its agents must have been at fault in reference to the icy condition of the step. They could not have been at fault unless they knew or should have known of its condition, in time, to have remedied it. The record does not disclose that there was any issue or even claim that defendant was negligent in allowing the step to get in its icy condition. In fact, defendant does not make any point about that. The instruction is obscure or ambiguous in ref-

erence to the matter under discussion but the jury in reading it, together with defendant's Instruction "M," could not have misunderstood what the issue was in reference to this matter. Instruction "M" reads as follows:

"The court instructs the jury that the law did not require the defendant to keep up a continuous inspection of the step in question, while the street car was en route from one end of the line to the other, and even though you find and believe from the evidence that said step was slippery at the time and place in question, and that plaintiff did slip thereon and fall, yet, if you find and believe from the evidence that ice or snow, or both, was deposited upon said step, and that the same was thereby made slippery, by passengers entering or leaving said street car while the same was en route on said trip, if you so find, and that the operator in charge of said street car did not know, or by the exercise of the highest practicable degree of care under the circumstances then and there existing could not have known thereof, if you so find, then, regardless of every other fact and circumstance in the case, plaintiff cannot recover, and your verdict must be for the defendant."

It is well settled that an instruction that covers the entire case and directs a verdict must include every element necessary to authorize recovery and if it fails to do so it cannot be cured by another or other instructions. [Macklin v. Fogel Constr. Co., 31 S. W. (2d) 14, 19.] However, this rule applies only when the court has submitted to the jury two irreconcilable rules in the two or more instructions so that it may not be known which one the jury followed. If an instruction of plaintiff which directs a verdict is complained of, and it covers every necessary element, but by reason of some obscurity or ambiguity the meaning may not be clear, then it is proper for us to read all of the instructions together, and if the meaning is fully cleared up in another instruction or instructions, the one complained of will not be held up to be reversibly erroneous. [Oldham v. Standard Oil Co., 15 S. W. (2d) 899; Sutter v. Met. St. Ry. Co., 208 S. W. 851, 853.]

The situation in reference to the instruction complained of is very similar to the one in the case of Craig v. United Ry., supra. It was there held that the obscurity in plaintiff's instruction was cured by one given on the part of the defendant. Defendant claims that the St. Louis Court of Appeals in the Craig case failed to follow the true rule in this regard, but we think to the contrary. We have examined the case of Wasson v. City of Nevada, 236 S. W. 399, and like cases cited by defendant, and find that in each of them one of the essential elements of plaintiff's recovery was entirely omitted from the instruction.

The evidence shows that after her injury plaintiff was treated by two doctors, Spencer and Rumsey. Neither of these testified at the

trial. Plaintiff's brother was also absent. Defendant offered, but the court refused, the following instruction "D".

"The court instructs the jury that if you find and believe from the evidence in this case that plaintiff was treated by a Dr. Rumsey and by a Dr. Spencer for injuries alleged to have been sustained by her on January 8, 1929, if any, and that said doctors could have been produced by plaintiff to testify in this case but were not produced by plaintiff, then the court instructs you that the law presumes that the testimony of said doctors had they been presented and testified in this case, would have been unfavorable to plaintiff."

After this instruction was refused the court called counsel to the bench. It was stated by the attorney for the plaintiff that, in her deposition taken before the trial, she testified fully with reference to the treatment given her by her doctors and that she had therefore waived the confidential relationship existing between them. The court ruled that plaintiff, having discussed the treatment that she had received from the doctors in her deposition, had "waived the privilege and from that time forward these doctors were as accessible and available to the defendant as to the plaintiff," and ruled that counsel for defendant, in his argument to the jury, should not comment on the failure of plaintiff to produce their testimony. This ruling was the result of objection on the part of plaintiff's counsel to defendant's counsel arguing the matter to the jury.

Counsel for the defendant, in arguing the case to the jury, did not refer to the absence of the doctors but attempted to draw an unfavorable inference against plaintiff by reason of her having failed to produce the testimony of her brother, Prather. The court more than once sustained objections to this line of argument on the theory that the witness was as equally available to defendant as plaintiff and instructed the jury to wholly disregard the argument in reference to the matter.

Plaintiff called no medical testimony except an X-ray specialist who examined her a short time before the trial for the purpose of testifying. It appears that shortly before the present case was tried the husband's case for loss of services of his wife had been tried with an unfavorable result to the plaintiff. During that time plaintiff used as one of his witnesses, Prather, his wife's brother. By reason of the fact that certain testimony was taken in the trial court in reference to the matter of overruling or sustaining the motion for a new trial in the case at bar, it appears that on cross-examination of Prather in the other case defendant produced a statement at the trial of that case that her brother had made to it in which he stated that the accident was "caused by the car not stopping in the proper place." Prather, in effect, admitted this statement to be his. The

record in this trial discloses that the brother was friendly to the plaintiff. There was testimony on the part of plaintiff at the present trial showing that before the trial her brother went to Des Moines, Iowa, to visit another brother who was sick in the hospital there. Plaintiff testified: "I am expecting him back most any time." He lived at Eureka, Kansas, but had been in Kansas City a day or two before going to Des Moines. Plaintiff introduced a telegram from him dated Des Moines, Iowa, 8:15 A. M., February 25th, which was the day before the trial, and sent to her in Kansas City, reading as follows: "Won't arrive Kansas City before tomorrow night." The testimony of the defendant tends to show that he was in Eureka at 8:55 P. M. of February 25th. It is not disputed that Prather easily could have come through Kansas City, where the trial was to occur, on his way to Eureka, indeed, if this was not the most direct route.

Ordinarily when the matter of calling a plaintiff's friendly brother, which the record discloses was a witness to all the facts giving rise to a cause of action, is presented, the court and the jury have not the advantage of knowing what the witness will testify to, but are entitled to draw the inference of fact that the testimony of such a witness will be unfavorable to plaintiff. It appears in this case that had the brother been called his testimony, as a whole, would actually have been unfavorable to the plaintiff. (The parties have submitted this case to us as though the testimony taken on the motion for a new trial may be considered by us. But whether it is to be so considered does not affect the result.) While Prather's statement given to the defendant, to the effect, that the accident was caused by the car not stopping in the proper place, was not before the jury, it is quite evident that had he been produced by plaintiff his testimony, as a whole, would have been damaging to her cause. Defendant's counsel in his argument to the jury had no right to refer to the statement that Prather gave defendant, and made no attempt to do so, but he did have the right to ask the jury to draw an unfavorable inference from the fact that Prather was not produced.

It appears that Dr. Spencer was in Chapman, Kansas, at the time of the trial. Plaintiff testified that she attempted to get him to come to Kansas City to testify in her case but that he stated to her that it was impossible for him to be there. No attempt was made whatever to explain the absence of her family physician, Dr. Rumsey.

Defendant complains of the refusal of the court to give its instruction "D", and to permit its counsel to argue to the jury that an unfavorable inference should be drawn against plaintiff by reason of her failure to produce the testimony of the doctors and her brother. The instruction was a comment on the evidence and its refusal was proper. [Hartman v. Hartman, 314 Mo. 305, 311.]

But we are of the opinion that the court erred in refusing to permit counsel to argue the matters referred to. The court was evidently under an erroneous impression as to the meaning of the word "availability" in reference to witnesses.

"It is true that in a sense, with the patient's privilege waived by his testimony on direct examination, the physicians and pictures were equally available to defendants, if we mean by this that they were equally subject to process issued by defendant's request, and equally competent to testify and be put in evidence as a part of defendant's case. But the term 'available' means more than this. It also means that the particular evidence must be equally within the knowledge and power of the opposite party, and as reasonably expected to be favorable to him." [Donet v. Prudential Ins. Co., 23 S. W. (2d) 1104, 1107.]

" 'All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' [Kirk v. Middlebrook, 216 Mo. 245, 288; Powell v. Railroad, 255 Mo. 420, 447.] But that rule finds application in instances where the party failing to call a witness, or to produce matters of evidence, has the advantage of the other by having the witness, or matter of evidence, within easier control." [Crane v. K. C. So. Ry. Co., 199 Mo. App. 448, 450, 451.]

"We recognize the rule 'that the failure of a party to call a friendly witness having personal knowledge of the facts in issue, raises a presumption or inference that the witness' testimony would have been detrimental to him.' [22 Am. & Eng. Ency. of Law (2 Ed.), 1261]" [Booher v. Trainer, 172 Mo. App. 376, 379.]

"The fact that a party to an action fails to call a witness who, under the circumstances of the case, would naturally be a witness in his behalf, may be commented on by opposing counsel." [2 R. C. L. p. 412.]

There is no question in our minds but that the court committed error in unduling restricting counsel for defendant in respect to the matters mentioned. See the authorities from which we have quoted, supra, also, Hartman v. Hartman, supra; Dunkeson v. Williams, 242 S. W. 653, 658; Fleishman v. Ice & Fuel Co., 163 Mo. App. 416; Bright v. Sammons, 214 S. W. 425; Atkinson v. Rys. Co., 228 S. W. 483, 485; Winkler v. Pitts, C. C. & St. L. R. Co., 10 S. W. (2d) 649.

The court likewise committed error in failing to permit counsel for defendant to argue that an unfavorable inference arose against plaintiff for her failure to call her brother as a witness. [See Dunkeson v. Williams, supra, 1. c. 658.]

Defendant contends that the verdict is excessive and that we should reduce it, but we are not prepared to say that that should be done in

this case.   Suffice it to say that it is a very substantial verdict for the injuries complained of, which were largely to the back of her head, to the fifth and sixth servical vertebra'e and to the internal semilunar cartilage of the right knee.

Counsel contends that if we find that the court erred in refusing to permit counsel for the defendant to argue to the jury the matter of the absence of the doctors, the matter would merely go to the question of the amount of the verdict and the error may be cured by a remittitur.   However that may be, the refusal of the court to permit counsel for defendant to refer to the absence of Prather has nothing to do with the amount of the verdict and we think that this, alone, constituted error of a serious nature and the inability of counsel for defendant to argue the matter of the absence of these witnesses, in view of the fact that there were as many as three of them whom the jury could have presumed would have normally given testimony friendly to plaintiff's case, were not called by her, was of such prejudicial nature as to constitute reversible error.   [Peppers v. Railway Co., 316 Mo. 1104, 1115; 38 Cyc. pp. 1485, 1486, 1490; 2 R. C. L. pp. 411, 412, 413.]

''Counsel should not be too closely confined in his argument to the jury.   The most liberal freedom of speech should be allowed.   He should be permitted to discuss the facts proved or admitted in the pleadings, arraign the conduct of the parties, and attack the credibility of witnesses, and he may indulge in oratorical conceit or flourish.''   [2 R. C. L. p. 411.]

It would be difficult for us to arrive at the amount of the remittitur to be made as a result of the error in excluding the argument in reference to the absence of the doctors.

It appears that defendant was convinced that plaintiff would not produce Prather as a witness and that defendant did not subpoena him when it had an opportunity.   But there was no duty on its part to produce the witness or his testimony.

While matters of this kind are largely within the discretion of the trial court, we think this was abused in this instance.   The cases in which we have upheld the discretion of the trial court in this regard are usually those where improper argument has been made and, consequently, the trial court is in a better position than are we to judge of its influence on the jury, but here the trial court refused to allow argument of the most persuasive character concerning the good faith of plaintiff's claim.   We do not mean to say that we would reverse the case, alone for the reason that counsel was not permitted to advert the fact that Dr. Spencer was not called, because it appears that he was out of the jurisdiction where he could not have been reached by subpoena and he would not come voluntarily.   However,

we might say in this connection that the better practice would have been to permit counsel for defendant to discuss this matter and counsel for plaintiff could have explained the doctor's absence. [Peck v. Traction Co., 131 Mo. App. 134, 142, 143.]

It is contended that defendant is in no position to complain of the refusal of the court to permit its counsel to comment upon the absence of plaintiff's doctors because the ruling was made by the court before the argument commenced and that counsel for the defendant should have attempted to argue the question and then saved his exception if the court had refused to allow him to proceed with the matter. There is no merit in this contention. See White v. Mo. Motors Distr. Co., 47 S. W. (2d) 245, 248, where we said:

"It is claimed by plaintiff that there was no objection made to the testimony in question at the time that it was read to the jury. The record shows that the matter of the testimony of this witness was settled by the trial court in chambers prior to the reading of the deposition to the jury. At this time the proper objections were made to the questions and answers contained in the deposition and the objections were overruled by the court. The matter thus being finally settled before the questions and answers were read to the jury, it was unnecessary for defendant to make further objection to the testimony."

The judgment is reversed and the cause remanded. All concur.