

# Missouri Court of Appeals

## Southern District

### Division Two

PHILIP H. BERGER,          )
                                   )
          Appellant,      )
                                   )
    vs.                   )     No. SD34193
                                   )
COPELAND CORPORATION, LLC,   )     FILED: October 5, 2016
                                 )
          Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

#### Honorable Ralph H. Jaynes, Judge

### AFFIRMED

Assessing damages at $5 million actual and $23 million punitive, jurors found for Philip Berger against his employer Copeland Corporation on workplace liability claims for exposure to contaminated metalworking fluids.[1]  Upon Copeland's motion, the trial court ordered a new trial "because this Court erred in submitting Instructions 6 and 10," respectively a negligence verdict director and a non-MAI inference instruction.

---

[1] There are no issues in this appeal regarding workers' compensation exclusivity or claims against other defendants.  Rule references are to Missouri Court Rules (2013).

Berger appeals the new trial order, raising four points. We deny two without extended discussion[2] and take up Point III, which challenges the grant of a new trial for error in giving the following non-MAI inference instruction on spoliation:

INSTRUCTION NO. 10

> If you should find that a party willfully destroyed evidence in order to prevent its being presented in this trial, you may consider such destruction in determining what inferences to draw from the evidence or facts in this case. You may, but are not required to, assume that the contents of the files destroyed would have been adverse, or detrimental to that party.

To win Point III, Berger must show Instruction 10 was not erroneous *or* it created no substantial risk of prejudice. ***MFA Oil Co. v. Robertson-Williams Transport, Inc.***, 18 S.W.3d 437, 439 (Mo.App. 2000).

## It was Error to Submit Instruction 10

Since ***Hartman v. Hartman***, 284 S.W. 488 (Mo. banc 1926), if not earlier, Missouri has prohibited adverse-inference jury instructions. Counsel can argue the inference to the jury, but no jury instruction should be given. ***Id***. at 489.

The most recent case involved a spoliation claim. *See* ***Pisoni v. Steak 'N Shake Operations, Inc.***, 468 S.W.3d 922, 925-28 (Mo.App. 2015), which directly supports the trial court's decision here and from which we quote:

> Appellant does not identify any Missouri case law demonstrating that, upon a finding of spoliation, a party is entitled to relief in the form of an adverse-inference jury instruction. As noted by the

---

[2] Point I asserts judicial estoppel and is mooted by our reversal and remand in ***Berger v. Emerson Climate Technologies***, No. SD34288, also handed down today. Point IV claims the trial court lacked jurisdiction to grant Copeland's new trial motion. This was ruled against Berger in a prior appeal (***Berger v. Copeland Corporation***, No. SD33292 (Mo.App. Jan. 6, 2015)), which is the law of the case. *See* ***Walton v. City of Berkeley***, 223 S.W.3d 126, 128-31 (Mo. banc 2007).

Missouri Supreme Court Committee on Jury Instructions ("the Committee"), many things cannot be stated in instructions, including inferences. Mo. Approved Jury Instr. (Civil), Why and How to Instruct a Jury (7th ed.), at LXXV. Specifically, the Committee provides the following:

> Every lawyer knows that ... an adverse presumption arises against the spoiler of evidence, ad infinitum. Nevertheless, none of those presumptions or inferences or abstract statements of law has any place in a jury instruction.

*Id.* at LXXV–LXXVI. The prohibition against such an instruction is based upon the principle that the trial court should not comment on the evidence. *See Hartman v. Hartman,* 314 Mo. 305, 284 S.W. 488, 489 (1926) ("Such an instruction would be a comment on the evidence; it is an inference of fact, not of law").

*Id*. at 927-28. The Eastern District thus held, spoliation or not, that "Appellant was not entitled to any jury instruction addressing that issue." *Id*. at 928.

Berger's efforts to discredit **Pisoni** and distinguish **Hartman** led us to examine case law. After **Hartman** came **Crapson v. United Chatauqua Co.**, 37 S.W.2d 966, 967-68 (Mo.App 1931), which found "no room for doubt" from **Hartman** and other cases that an adverse-inference instruction would have been improper. Next citing **Hartman** to similar effect was **Smith v. Kansas City Pub. Serv. Co.**, 56 S.W.2d 838, 842 (Mo.App. 1933). A decade later, cases moved to the criminal side until **Pisoni** last year. *See* **State v. Damon**, 169 S.W.2d 382, 384 (Mo. 1943); **State v. Parker**, 543 S.W.2d 236, 245 (Mo.App. 1976); **State v. Brooks**, 567 S.W.2d 348, 351 (Mo.App. 1978); **State v. Cameron**, 604 S.W.2d 653, 661 (Mo.App. 1980); **State v. Dees**, 631 S.W.2d 912, 916 (Mo.App. 1982); **State v. Eib**, 716 S.W.2d 304, 309-10 (Mo.App. 1986).

The gap in civil cases preceding **Pisoni** may be attributable in part to MAI's arrival in the 1960's. With case law already barring inference instructions, it was

3

natural that MAI's austere philosophy of jury instruction would continue to prohibit these and other accurate but abstract statements of law:

> Many things can not be stated in the instructions. Those are the matters which are rules of law, presumptions, *inferences* and the like.
>
> Every lawyer knows that a deceased accident victim is presumed to have exercised care for decedent's own safety until evidence of lack of care appears; that every person is presumed to know the law, that there is an arguable adverse inference that a civil litigant who fails to testify on that party's own behalf would not have helped a particular position, *that an adverse presumption arises against the spoiler of evidence*, ad infinitum. *Nevertheless, none of those presumptions or inferences or abstract statements of law has any place in a jury instruction.* [Emphasis added.]

MAI "Why and How to Instruct a Jury" CXLVI (3d ed. 1981, and replicated in 4th, 5th, 6th, and current 7th editions) ("MAI Why and How"). This court has followed that guidance. *See **Criswell v. Short***, 70 S.W.3d 592, 594-95 (Mo.App. 2002) (quoting MAI Why and How). "'[R]ules of law, presumptions, inferences and the like are not to be set out in instructions.'" ***Id***. at 595 (quoting MAI Why and How).[3]

---

[3] Berger's argument that MAI Why and How "is not authoritative and the court in *Pisoni* should not have relied on it" is a fair one that prompted us to research and find the seemingly unbroken Missouri case law support for ***Pisoni***'s holding. But Berger borders on maligning our sister district by insinuating:

> Presumably, it would be of great interest to the Supreme Court of Missouri that courts are relying on language from a secondary source that the Supreme Court has specifically declared non-authoritative to make novel and sweeping declarations of Missouri law.

Although tempted to say more, we answer this ill-considered slap at our colleagues with just two observations. ***Pisoni*** made no "novel" legal declaration, but continued a line of Missouri cases barring adverse-inference instructions. And long ago, our supreme court itself cited "Why and How to Instruct a Jury," and in doing so has been followed by each district of this court. *See **Callahan v. Cardinal Glennon Hospital***, 863 S.W.2d 852, 863 (Mo. banc 1993); ***Hedgecorth v. Union Pacific R.R.***, 210 S.W.3d 220, 228 (Mo.App. 2006); ***Criswell***, 70 S.W.3d at 594-95; ***Environmental Protection, Inspection, and Consulting, Inc. v. City of***

4

In summary, Missouri's longstanding rule against inference instructions runs from **Hartman** through **Pisoni** to the present. Berger cites no contrary Missouri case or secondary authority, either before or since MAI.[4] These and our earlier

---

*Kansas City*, 37 S.W.3d 360, 368 n.10 (Mo.App. 2000); ***Drury v. Missouri Pacific R.R.***, 905 S.W.2d 138, 146 (Mo.App. 1995).

It is equally unbecoming that Berger blames the trial judge, complaining in his brief that "[t]he trial court was within its discretion to either offer or refuse to offer the instruction on spoliation. It was not, however, within its discretion to elect to offer the instruction and then deny Berger the jury verdict in his favor on the grounds that it offered the instruction," and again in his reply brief that the court could not "choose to offer the mild spoliation instruction … and then punish Berger by granting a new trial based on the spoliation instruction." The trial judge deserves credit, not blame, for acting on the error Berger led it into. Had that court not acted, this court would have.

[4] Berger cites two Eighth Circuit *sanction* cases, first ***Stevenson v. Union Pac. R.R.***, 354 F.3d 739 (8th Cir. 2004), then ***Hallmark Cards, Inc. v. Murley***, 703 F.3d 456 (8th Cir. 2013), which was Berger's source for Instruction 10 and from which we quote (***id***. at 460, 461):

> Our Court made clear in *Stevenson v. Union Pacific R.R. Co.* that in a case involving the alleged spoliation of evidence, a district court is required to make two findings before an adverse inference instruction is warranted: (1) "there must be a finding of intentional destruction indicating a desire to suppress the truth," and (2) "[t]here must be a finding of prejudice to the opposing party." 354 F.3d 739, 746, 748 (8th Cir. 2004).
>
> * * *
>
> Taking into consideration the gravity of an adverse inference instruction, which "brands one party as a bad actor," *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (8th Cir.2004), we conclude that a district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction.

Instruction 10 may be copied from **Hallmark**, but these federal decisions do not support its use in our case. Federal courts follow federal (not state) law on these issues. *See* ***Burris v. Gulf Underwriters Ins. Co.***, 787 F.3d 875, 879 (8th Cir. 2015). Ours is not a judicial-sanctions case (*contrast* **Hallmark**, 703 F.3d 461-62, and **Stevenson**, 354 F.3d at 743, 745-50) or one with judicial findings of intentional destruction, bad faith, or prejudice as required by **Hallmark** (see above).

However, we *do* agree with **Hallmark** about the "gravity" of adverse-inference instructions (703 F.3d at 461), such that even the facially correct and neutral

5

observations defeat every Point III no-error argument worth mentioning.  Therefore, and per **Pisoni**, we agree with the trial court's finding that it erred in submitting Instruction 10.

## Prejudice Not Disproved

It is Berger's burden to establish nonprejudice.  **Murphy v. Land**, 420 S.W.2d 505, 507 (Mo. 1967); **MFA Oil**, 18 S.W.3d at 439.

He urges that Instruction 10 was an accurate and neutral statement of law, or enough so that "[i]t cannot be said to have constituted prejudice so great that a new trial should be given."  This finds answer, first, in Berger's source for the instruction, which recognized such instruction's "gravity," that it "brands one party as a bad actor," and that it should not be given absent prior and explicit trial court findings not made in this case.  **Hallmark**, 703 F.3d at 461.

Berger's counsel leveraged this gravity and bad-actor branding in summation by reading Instruction 10 verbatim and linking it to Copeland's own documentation:

> But this is complicated by the fact that they destroyed all the documents. And the instruction that you're going to be given back there, instruction number 10, is important in regard to this finding.

> Because - - and if you want to and if you believe it's more likely than not true - - if you should find that a party willfully destroyed evidence in order to prevent its being presented in this trial, you may consider such destruction in determining what inference to draw from the evidence or facts in this case.

---

instruction copied here as Instruction 10 "brands [Copeland] as a bad actor."  **Id**.  We will address this further under the issue of prejudice.

You may, but are not required, to assume that the contents of the files destroyed would have been adverse or detrimental to the defendant.

But in considering that and whether or not you believe that's likely to be true or not, look at the - - look at the document instruction [sic] policy. This is Exhibit 250.

And in this regard at the very beginning there's a warning. And it says "destruction of records relating to judicial proceedings can result in sanctions against the company and the individuals and is absolutely forbidden."

So they must have been really bad because they're all gone. And you've seen that it's the lawyers here who are in charge of producing all the records and hiring all the witnesses.

And when they want to produce records, they could, including all the receipts dating back to when he was just hired.

They had the procedures of what the tests would be. Those were still preserved. But not the results.

Ask yourself how bad must the results have been that they needed to be destroyed, that it was better to have me read this to you than for you to see the results in terms of the microbial growth in that room?

\* \* \*

Where are the tests? They took the tests and then they destroyed them. Where are they? They showed you the QRs, but they have no tests.

And the instructions tell you you can consider that in finding them to have engaged in negligence.

We have often recognized that an instruction's prejudicial effect is primarily within the trial court's purview and we should look with liberality upon that court's action in granting a new trial. *See **McTeer v. Clarkson Const. Co.***, 807 S.W.2d 174, 181 (Mo.App. 1991); ***Jenkins v. Keller***, 579 S.W.2d 166, 168 (Mo.App. 1979); ***Wilkerson v. State Farm Mut. Auto. Ins. Co.***, 510 S.W.2d 50, 56-57 (Mo.App.

7

1974); **Brittain v. Clark**, 462 S.W.2d 153, 157 (Mo.App. 1970). This record gives us no cause to depart from that practice. An experienced trial judge, upon reflection, determined that Instruction 10 was given in error. "While the trial court made no specific finding that it was prejudicial error, that is implicit in the order granting [Copeland] a new trial." **McTeer**, 807 S.W.2d at 181.

Point III fails. We need not reach Point II's challenge to the other finding of instructional error, which may not reoccur on retrial.

## Conclusion

We affirm the trial court's judgment granting a new trial on Berger's claims for compensatory and punitive damages.[5]

DANIEL E. SCOTT, J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[5] This moots Copeland's charge of error in admitting evidence of its parent corporation's financial condition on the issue of punitive damages against Copeland, an issue that may arise again on retrial. Generally, "introduction of the wealth of a parent corporation is improper in a suit against a subsidiary corporation where the two are operated as separate entities and the subsidiary is not a 'mere instrumentality' of the parent." 1 Stein on Personal Injury Damages Treatise § 4:58 (3d ed., database updated Apr. 2016)(accessed online). *See, e.g.*, **Cap Gemini Am., Inc. v. Judd**, 597 N.E.2d 1272, 1286 (Ind.App. 1992)(parent corporation's wealth generally irrelevant and inadmissible in assessing punitive damages against subsidiary); **HCA Health Services v. Nat'l Bank of Commerce**, 745 S.W.2d 120, 123-24 (Ark. 1988); **Walker v. Dominick's Finer Foods, Inc.**, 415 N.E.2d 1213, 1216-17 (Ill.App. 1980).