# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2855
_____

Hallmark Cards, Incorporated

*Plaintiff - Appellee*

v.

Janet L. Murley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 20, 2012
Filed: January 15, 2013

_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

Hallmark Cards, Inc. ("Hallmark") sued its former employee, Janet Murley, for a breach of the parties' separation agreement and won a $860,000 jury verdict on its breach of contract claim. The district court[1] denied Murley's motion for a new trial.

_____

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Murley now appeals, arguing the district court erred in delivering an adverse inference instruction to the jury and the award on Hallmark's breach of contract claim was excessive. We modify and affirm the decision of the district court.

I

Murley served as Hallmark's group vice-president of marketing from 1999 to 2002. In this capacity, she was responsible for product and business development, advertising, and research, and had access to confidential information including Hallmark's business plans, market research, and financial information. In 2002, Hallmark eliminated Murley's position as part of a corporate restructuring. Murley and Hallmark entered into a negotiated separation agreement which laid out the terms of Murley's departure. Pursuant to the agreement, Murley agreed not to work in the greeting card or gift industry for a period of eighteen months, solicit Hallmark employees, disclose or use any proprietary or confidential information, or retain any business records or documents relating to Hallmark. She also agreed to release Hallmark from any claims arising from her termination. In exchange, Hallmark offered Murley a $735,000 severance payment, eighteen months of paid COBRA benefits, executive outplacement services, and paid tax preparation for two years.

In 2006, after the expiration of her non-compete agreement, Murley accepted a consulting assignment with Recycled Paper Greetings ("RPG") for $125,000. Murley admits that in the course of that assignment, she disclosed to RPG confidential Hallmark information including slides from Hallmark's business model redesign, information regarding Hallmark's consumer buying process, and long-term industry analysis gathered from Hallmark's market research. Hallmark was unaware of Murley's disclosures until 2009, when RPG was purchased by American Greetings. Prior to the closing of that sale, American Greetings contacted Hallmark to arrange a third-party review of RPG's records to ensure none of Hallmark's confidential

information was contained therein. The third-party reviewer uncovered a number of Hallmark's documents in the records and alerted Hallmark to its findings.

On May 14, 2009, Hallmark filed suit against Murley, alleging breach of contract, misappropriation of trade secrets, conversion of Hallmark's confidential information, and unjust enrichment. During discovery, Hallmark learned that in 2007, RPG's investor Monitor Clipper had arranged for a forensic computer company called LuciData to make a copy of Murley's hard drive. LuciData forwarded that copy to Hallmark's computer expert in June 2010. At trial, Hallmark's computer expert testified that in the two days leading up to LuciData's review, sixty-seven documents had been deleted from Murley's computer, eight of which plus one folder related to Hallmark. Consequently, Hallmark sought an adverse inference instruction allowing the jury to infer that Murley had deliberately destroyed those documents to conceal their contents. Murley objected to the instruction absent a prior finding by the court that she had acted in bad faith and that Hallmark had been prejudiced by the deletion of those files. After a jury instruction conference, the district court denied Murley's objection and gave the following instruction to the jury at the close of evidence:

> If you should find that a party willfully destroyed evidence in order to prevent its being presented in this trial, you may consider such destruction in determining what inferences to draw from the evidence or facts in this case. You may, but are not required to, assume that the contents of the files destroyed would have been adverse, or detrimental to the Defendant.

Instr. No. 12, Appellant's App. 0145.

Hallmark sought damages of $860,000, consisting of the $735,000 severance payment it made to Hurley under the parties' 2002 agreement and the $125,000 Murley received from RPG in exchange for her consulting services. With respect to

the amount of damages, the district court instructed the jury to award Hallmark "such sum as you believe will fairly and justly compensate [Hallmark] for any damages you believe [Hallmark] sustained as a direct result of [Murley's] conduct." The jury returned a verdict in Hallmark's favor and awarded it exactly $860,000 in damages.

Murley filed a post-trial motion seeking judgment as a matter of law or, in the alternative, a new trial on the grounds that the district court's adverse inference instruction had been improperly given and the jury verdict was excessive and a result of the jury's passion or prejudice. With respect to the adverse inference instruction, Murley argued the district court had not issued the requisite findings that Murley had destroyed the documents in bad faith and that Hallmark had been prejudiced by their nonproduction at trial. The district court denied Murley's motion, concluding (1) Hallmark had presented "sufficient evidence that a reasonable jury could have found for [Hallmark]," (2) Murley had failed to identify any manifest errors of law or fact, and (3) the jury's verdict was not excessive and did not indicate passion or prejudice. Jt. App. 285. This appeal followed.

II

A. The Adverse Inference Instruction

We first consider Murley's argument that the district court's improper delivery of an adverse inference instruction entitles her to a new trial. We review a district court's decision to give particular instructions for an abuse of discretion. See Slathar v. Sather Trucking Corp., 78 F.3d 415, 419 (8th Cir. 1996). We consider whether the jury instructions, "taken as a whole and viewed in light of the evidence and applicable law, 'fairly and adequately submitted the issues in the case to the jury.'" Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 995 (8th Cir. 1999) (quoting White v. Honeywell, Inc., 141 F.3d 1270, 1278 (8th Cir. 1998)). Because many errors are harmless, we will not reverse the judgment unless the alleged error was prejudicial.

-4-

See Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1124 (8th Cir. 1998).  We will order a new trial only if the error "misled the jury or had a probable effect on its verdict." See E.I. du Pont de Nemours & Co. v. Berkley & Co., Inc., 620 F.2d 1247, 1257 (8th Cir. 1980).

Our Court made clear in Stevenson v. Union Pacific R.R. Co. that in a case involving the alleged spoliation of evidence, a district court is required to make two findings before an adverse inference instruction is warranted:  (1) "there must be a finding of intentional destruction indicating a desire to suppress the truth," and (2) "[t]here must be a finding of prejudice to the opposing party."  354 F.3d 739, 746, 748 (8th Cir. 2004).  At the close of trial, over Murley's renewed objection, the district court instructed the jury that if it found Murley had intentionally destroyed the Hallmark-related documents, it could infer the contents of those documents would have been adverse or detrimental to her.  Instr. No. 12, Appellant's App. 0145. Murley contends the instruction was improper because it was given absent the requisite findings by the court that she destroyed the electronic evidence in bad faith and that Hallmark suffered any prejudice as a result of its nonproduction at trial.

Murley first raised the issue of the required bad faith and prejudice findings prior to trial, when she objected to Hallmark's request for an adverse inference instruction and requested an evidentiary hearing regarding her alleged deletion of Hallmark's documents.  The district court denied Murley's request, choosing instead to render its decision based upon the evidence presented at trial.  At the close of the evidence, Murley renewed her objection to the adverse inference instruction on the grounds that the district court had not yet issued findings regarding bad faith and prejudice.  The court overruled her objection and submitted the adverse inference instruction to the jury.  Murley raised the issue a third time in a post-trial motion for judgment as a matter of law or, alternatively, a new trial, which the court denied.

-5-

In light of Murley's repeated efforts to elicit the requisite findings, we presume the court below was aware of our requirement that a district court must find bad faith and prejudice prior to giving an adverse inference instruction. The evidence presented at trial strongly suggests both were present. Murley's desire to suppress the contents of the electronic evidence at issue is reasonably suggested by the fact that she retained Hallmark-related documents five years past her termination but deleted them in the forty-eight hours prior to an inspection of her private computer. That the non-production of those documents would disadvantage Hallmark in a case hinging on Murley's retention and disclosure of Hallmark's confidential information is a given. Accordingly, Murley's contention that the district court failed to make *any* finding of bad faith and prejudice before submitting the adverse inference instruction to the jury is unpersuasive.

Under the circumstances, we may infer the district court made the requisite findings from the fact that it gave the adverse inference instruction over Murley's multiple objections and from its denial of Murley's post-trial motion on the same grounds. Thus, the issue before us is whether our standard requires a district court judge to issue explicit findings of bad faith and prejudice before giving an adverse inference instruction at trial or if such findings may be implicit.

This appears to be an issue of first impression, as the only relevant precedent in our Circuit comes from a district court opinion in which the U.S. District court for the Eastern District of Missouri noted "[a]n explicit finding of bad faith is required to impose sanctions for: (1) spoliation that occurred prior to commencement of litigation . . . ." Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc., No. 1:11-CV-19, 2012 WL 2992627, at *4 (E.D. Mo. July 20, 2012). In support of its proposition, the court cited Process Controls Intern., Inc. v. Emerson Process Mgmt, No. 4:10-CV-645, 2011 WL 5006220, at *6 (E.D. Mo. Oct. 20, 2011) and Menz v. New Holland North America, Inc. 440 F.3d 1002, 1006 (8th Cir. 2006)—both of which merely require "a finding." Thus, the American Builders

court's requirement of an explicit finding would seem to be an addition of its own devise.

Our holding in Stevenson may provide more context. There, a district court imposed an adverse inference instruction against a party found to have destroyed evidence both prior to litigation and during discovery. 354 F.3d at 750. Drawing a distinction between the spoliation of evidence prior to litigation and during litigation, we upheld the instruction with respect to the latter on the grounds that a district court is entitled to fashion appropriate sanctions for such evasive litigation tactics—"even absent an explicit bad faith finding." Id. at 748–50. Our holding in Stevenson may, therefore, be read to suggest that "an explicit bad faith finding" is required in the usual case involving pre-litigation spoliation of evidence.

Prospectively, we hold this to be true. Taking into consideration the gravity of an adverse inference instruction, which "brands one party as a bad actor," Morris v. Union Pac. R.R., 373 F.3d 896, 900 (8th Cir. 2004), we conclude that a district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction. The minimal burden to trial judges in requiring an on-the-record declaration is offset by our interests in ensuring that sanctions are imposed only after thoughtful consideration and an appropriate weighing of the evidence.

Although the district court here did not issue explicit findings of bad faith and prejudice, we believe it engaged in such consideration prior to issuing the adverse inference instruction. The district court was reminded of the required findings before, during, and after trial, and chose nevertheless to deliver and uphold the instruction. Its decision is strongly supported by evidence that Murley deleted a number of Hallmark-related documents from her private computer just hours before it was scheduled for inspection—evidence to which Murley did not object at trial. And, with respect to prejudice, Hallmark would undoubtedly have benefitted from producing actual documents and examining their contents at a trial about the retention

-7-

and disclosure of confidential materials, rather than providing third-party testimony as to their once-existence. In light of the overwhelming evidence of bad faith and prejudice before the district court, we conclude its failure to issue explicit findings before delivering the otherwise warranted adverse inference instruction was harmless error which did not prejudice Murley. See Lowe v. Taylor Steel Products Co., 373 F.2d 65, 68 (8th Cir. 1967) ("The harmless error rule applies to [jury] instructions."). Accordingly, Murley is not entitled to a new trial on the basis of the instruction. See Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001) (affirming a district court's denial of a motion for a new trial where delivery of jury instruction did not prejudice movant).

## B. The Jury Verdict

For its breach-of-contract claims, Hallmark sought in damages an amount reflecting its $735,000 severance payment to Murley and the $125,000 Murley received as compensation from RPG. Hallmark based its entitlement to the amount Murley was paid by RPG on the fact that Murley's value to RPG rested, in large part, on her disclosure of materials and information that belonged to Hallmark. The jury returned a verdict in favor of Hallmark, awarding it $860,000 in damages—the sum of both payments. Murley contends that the jury's verdict was excessive and, therefore, the district court abused its discretion in denying her motion for a new trial.

We review the denial of a motion for a new trial for a "clear" abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice. Harrison v. Purdy Bros. Trucking Co., 312 F.3d 346, 351 (8th Cir. 2002). A new trial should be granted only if the evidence weighs heavily against the verdict. United States v. Rodriguez, 812 F.2d 414, 417 (8th Cir. 1987). When determining if a damage award arising from a state-law claim is excessive, state case law guides our inquiry. England v. Gulf & Western Mfg. Co., 728 F.2d 1026, 1029 (8th Cir. 1984). In Missouri, "courts generally defer to the jury's decision concerning

the amount of damages, and only overturn a jury's verdict when the defendants demonstrate that (1) some event occurred at trial that incited the bias and prejudice of the jury and (2) the verdict is so grossly excessive . . . so as to shock the conscience of the court." Synergetic, Inc. v. Hurst, 477 F.3d 949 (8th Cir. 2007) (quoting Middens v. Kansas City S. Ry. Co., 29 S.W.3d 813, 822 (Mo. 2000) (per curiam en banc)) (internal quotations omitted).

With respect to the $735,000, Murley contends Hallmark was not entitled to a return of its full payment under the parties' separation agreement because Murley fulfilled several material terms of that agreement (e.g., the release of liability and non-compete provisions). Under the circumstances, we cannot characterize the jury's reimbursement of Hallmark's original payment under the separation agreement as "grossly excessive" or "glaringly unwarranted by the evidence." See Tuterri's, Inc. v. Hartford Boiler Inspection and Ins. Co., 894 S.W.2d 266, 271 (Mo. Ct. App. 1995). Hallmark's terms under the separation agreement clearly indicated its priority in preserving confidentiality. At trial, Hallmark presented ample evidence that Murley not only retained but disclosed Hallmark's confidential materials to a competitor in violation of the terms and primary purpose of that agreement. Thus, the jury's determination that Hallmark was entitled to a full refund of its $735,000 is not against the weight of the evidence and does not warrant a new trial. See Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995) ("[W]here the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence, and where the district court balances and weighs the evidence based on the proper legal standards, the court's denial of a Rule 59 motion is virtually unassailable.") (internal citation omitted).

With respect to the remaining $125,000 of the jury award, Murley argues Hallmark can claim no entitlement to her compensation by RPG for consulting services unrelated to Hallmark. We agree. "In an action for breach of contract, a plaintiff may recover the benefit of his or her bargain as well as damages naturally and proximately caused by the breach and damages that could have been reasonably

contemplated by the defendant at the time of the agreement." Guidry v. Charter Commc'ns, Inc., 269 S.W.3d 520, 533 (Mo.App. E.D. 2008) (internal citation omitted). Moreover, "the law cannot elevate the non-breaching party to a better position than she would have enjoyed had the contract been completed on both sides." Id. By awarding Hallmark more than its $735,000 severance payment, the jury award placed Hallmark in a better position than it would find itself had Murley not breached the agreement. The jury's award of the $125,000 payment by RPG was, therefore, improper. We vacate the award and remand for the district court to reduce the fee award appropriately.

### III

For the foregoing reasons, we remand with directions to modify the judgment to reflect an award consistent with this opinion. So modified, the judgment will stand affirmed.

SHEPHERD, concurring in part and concurring in the judgment.

I concur in section II(B) of the majority's opinion, and I concur in the result which affirms the district court's denial of Murley's request for a new trial made based on the adverse inference instruction argument. I write separately, however, to emphasize that I do not join in the majority's decision in section II(A) that, until today, a district court has not been required to make "explicit" findings of bad faith and prejudice prior to issuing an adverse inference instruction. As I read the cases, the requirement that the district court make such findings is already well established. I concur in the judgment, however, because I believe any error in this case was harmless in light of the evidence of bad faith and prejudice.

The majority has determined that our prior cases did not require an "explicit" finding of bad faith and prejudice before issuance of the adverse inference instruction,

-10-

and thus we can infer that the finding was made by the fact that the instruction was issued. I disagree with this characterization of our prior cases. Clearly, our prior cases have required that a finding of bad faith and prejudice be made before issuing the instruction. See Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1006 (8th Cir. 2006) ("[A] finding of bad faith is necessary before giving an adverse inference instruction at trial against a plaintiff for the destruction of evidence."); Morris v. Union Pac. R.R., 373 F.3d 896, 901 (8th Cir. 2004) ("[A] finding of intent is required to impose the sanction of an adverse inference instruction."); Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746, 748 (8th Cir. 2004) ("[T]here must be a finding of intentional destruction indicating a desire to suppress the truth[.]" "There must be a finding of prejudice to the opposing party[.]"). Thus, I fail to see a reason to impose a "prospective" rule of requiring an "explicit" finding before issuing the adverse inference instruction. To require a district court to make "explicit findings" as opposed to merely making a "finding" seems to be a distinction without a difference. As presently constituted, the rule requiring district courts to make findings of bad faith and prejudice prior to issuing an adverse inference instruction should be understood to mean that the district court must announce findings in a manner to allow for appellate review of its decision.

The district court erred when it failed to make the necessary findings prior to imposing the adverse inference instruction. Despite this error, we may still affirm if the error is harmless. See Ondrisek v. Hoffman, 698 F.3d 1020, 1025 (8th Cir. 2012) (holding that error in jury instruction in a civil case requires reversal only if error affects a party's substantial rights). I agree with the majority that the error in this case is harmless. Murley's substantial rights are not affected in light of the overwhelming evidence of her bad faith as demonstrated by her intentional destruction of the computer files and the prejudice suffered by Hallmark in its ability to present this evidence to the jury. Thus, I respectfully concur in the majority's decision to affirm the denial of a new trial.

———————————————

-11-