# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1492
_____

White Communications, LLC; Jeffery N. White

*Plaintiffs - Appellants*

v.

Synergies3 Tec Services, LLC; Eric Atchley; Benton P. Odom, Jr.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 12, 2021
Filed: July 7, 2021
_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Jeffery White, together with his parents, was part-owner of White Communications, LLC, a satellite installation company. After a merger, Jeffery White became a member and part-owner of Synergies3 Tec Services, LLC ("Synergies"), another satellite installer for DirecTV. After he sent a sexually explicit text message to a customer, the other members of Synergies expelled Jeffery White as a member of the company. Jeffery White and White Communications

claimed the expulsion was a breach of the assumption agreement and the operating agreement between the parties, and they sued Synergies. At trial, the jury found in favor of White Communications on its breach of implied contract claim, but found in favor of Synergies on all other claims. Jeffery White and White Communications appeal several district court rulings, including (1) the denial of Jeffery White's motion for judgment as a matter of law, (2) multiple evidentiary rulings, and (3) the denial of their requests for a new trial. We affirm.

## I. Background

Both White Communications and Synergies install satellite television equipment for DirecTV. Prior to the merger between White Communications and Synergies, Jeffery White's parents owned White Communications, and Jeffery White operated the company. In March of 2016, Jeffery White became part-owner of White Communications when he obtained a 30% interest.

Between late 2015 and early 2016, White Communications and Synergies both learned that AT&T would acquire DirecTV and expected that AT&T would seek to consolidate its installation-service firms. Before that point, White Communications and Synergies were two of the largest satellite television installation subcontracting companies. In anticipation of consolidation, White Communications and Synergies entered into an assignment and assumption agreement in which Synergies assumed White Communications. Under the assumption agreement, Synergies paid White Communications $400,000 in cash and promised to pay 4.5% of its future gross revenues, indefinitely.

After the White Communications assumption, Synergies purchased Dynamic Installations, another service provider. Then White Communications, Synergies, and Dynamic Installations merged into one company. Jeffery White, along with the two former owners of Synergies, and the two former owners of Dynamic Installations entered into an operating agreement (the "Operating Agreement"), which stated that each would be members of Synergies. The Operating Agreement

further provided that Jeffery White owned 29% of Synergies, and he would receive 4.5% of the company's gross revenues. The Operating Agreement provided that a member could be removed "for cause" by a vote of the other four members.

Shortly after the merger, Jeffery White personally addressed a customer complaint regarding damage to the customer's home by a technician. In the course of attending to the complaint, Jeffery White sent an explicit text message to the customer stating "I wanna f— you." The customer complained to AT&T about the explicit text message, and representatives from AT&T reached out to Synergies seeking to remove Jeffery White's access to customer information. Jeffery White admitted he made contact with the customer but denied sending the explicit text message.

Citing the customer's complaint, the other four members of Synergies voted to remove Jeffery White as a member. They said they did so in part because they were concerned that AT&T would terminate the company's contract if Synergies failed to remove Jeffery White from leadership. As a result of Jeffery White's removal, he lost his 29% ownership stake in Synergies, and Synergies stopped paying him 4.5% of its gross revenues due under the Operating Agreement.

Jeffery White and White Communications sued Synergies alleging Synergies breached the initial assumption agreement and the Operating Agreement when it stopped paying Jeffery White. In response, Synergies argues it was within its rights to remove Jeffery White for cause and, therefore, there was no breach of either agreement. White Communications brought claims for breach of the assumption agreement and breach of implied contract, among other claims. Jeffery White also brought separate claims for breach of the assumption agreement, breach of implied contract, and breach of the Operating Agreement, among other claims. After a four-day trial, the jury returned a verdict in favor of Synergies on Jeffery White's breach of Operating Agreement claim and White Communications's breach of assumption agreement claim, but it found in favor of White Communications on its breach of implied contract claim and awarded $391,680 in damages. Jeffery White moved for

judgment as a matter of law, and the district court denied his motion. After the trial, both Jeffery White and White Communications filed separate motions for a new trial, and the district court denied both motions.

## II. Discussion

Both Jeffery White and White Communications appeal the district court's decisions on (1) Jeffery White's motion for judgment as a matter of law, (2) several evidentiary rulings, and (3) their motions for a new trial.

### A. Motion for Judgment as a Matter of Law

We review the district court's judgment as a matter of law decision de novo. *Milhauser v. Minco Prods., Inc.*, 701 F.3d 268, 272 (8th Cir. 2012). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50. We "review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence," *Duban v. Waverly Sales Co.*, 760 F.3d 832, 835 (8th Cir. 2014), and "[view] the evidence in the light most favorable to the verdict." *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018) (quoting *Smiley v. Gary Crossley Ford, Inc.*, 859 F.3d 545, 552 (8th Cir. 2017)).

Jeffery White argues that the district court erred in denying his motion for judgment as a matter of law because there was not legally-sufficient evidence to find Synergies terminated him for cause. Specifically, he argues that Synergies failed to show that his text message caused Synergies to suffer irreparable economic or reputational harm.

We conclude that the jury had a legally-sufficient basis to find that Synergies terminated Jeffery White for cause. First, although Jeffery White denied sending the

-4-

explicit text message that formed the basis for the removal vote, the jury was able to view as evidence a copy of the message sent from White's phone. Further, several of Synergies's members testified that the company's reputation was harmed as evidenced by the fact that AT&T reached out to Synergies and required Synergies to terminate Jeffery White's access to customer information. Other members also testified they had a generalized fear of a lawsuit from the recipient of the explicit text message, as well as the possibility of losing future business from AT&T. Other witnesses testified that Synergies suffered actual economic harm through the loss of several of its territories in the months after Jeffery White's termination, along with legal fees.

Considering this evidence in the light most favorable to the verdict, we conclude that the district court did not err in holding there was legally-sufficient evidence for a reasonable jury to find that Synergies terminated Jeffery White for cause. *See Washington*, 900 F.3d at 558. It was within the purview of the jury to determine whether Jeffery White's actions led to instant or deferred irreparable harm to Synergies's reputation or its economic interests. This is particularly true because there was a risk Jeffery White's action would cause AT&T—Synergies's primary client—to end the business relationship. AT&T's swift demand regarding Jeffery White and Synergies's shrinking territory after the incident support our conclusion that a reasonable jury could find there was a legally-sufficient basis to terminate Jeffery White. Accordingly, we affirm the district court's decision to deny Jeffery White's motion for judgment as a matter of law.

### B. Motions to Exclude Evidence

We review the district court's interpretation and application of evidentiary rules de novo and the factual findings supporting evidentiary rulings for abuse of discretion. *Winter v. Novartis Pharms. Corp*., 739 F.3d 405, 411 (8th Cir. 2014). "A district court has broad discretion whether to admit evidence, and [this court] will not reverse absent a clear and prejudicial abuse of that discretion." *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089, 1096 (8th Cir. 2017)

(quotation omitted). "Where evidence does not have a substantial influence on the verdict because it is cumulative, there is no prejudice." *Davis v. White*, 858 F.3d 1155, 1159 (8th Cir. 2017). "Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." *Id*. (quotation omitted).

### 1. Prior Bad Acts

Jeffery White and White Communications argue that the district court committed reversible error in admitting evidence of Jeffery White's prior bad conduct, specifically, testimony from former White Communications employees who recounted incidents of Jeffery White showing them explicit text messages he sent to other women. Synergies argues that evidence of Jeffery White's past behavior was admissible under Rule 404(b) because he denied sending the explicit text message giving rise to his termination.

Other-acts evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it is "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"The decision whether to admit prior-bad-acts evidence is committed to the sound discretion of the district court." *Adams v. Toyota Motor Corp*., 867 F.3d 903, 911 (8th Cir. 2017). Evidence of prior acts may be admitted if it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the event at issue." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (cleaned up) (quoting *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998)).

We conclude that the district court did not abuse its discretion in admitting evidence of Jeffery White's prior bad acts. At trial, Jeffery White consistently denied sending the explicit text message that led to his removal. Thus, it was not an abuse of discretion for the district court to allow Synergies to admit some evidence connecting Jeffery White to the explicit text message. The admission of Jeffery White's prior acts were relevant to connecting him to the explicit text message, and it was not more prejudicial than probative because the former employees' testimony was admissible for demonstrating intent, knowledge, identity, absence of mistake, and lack of accident surrounding the transmission of the explicit text.

## 2. Hearsay Evidence

Separately, Jeffery White and White Communications challenge the admission of double hearsay through certain exhibits and testimony. Hearsay is a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Unless a hearsay statement falls within an exception, it is generally inadmissible at trial. *United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008).

Even if the district court abused its discretion in admitting hearsay, such error was harmless if it did not influence, or only slightly influenced, the verdict. *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017); *Batiste-Davis*, 526 F.3d at 381 ("To be harmless error, the admitted evidence must not have had a substantial influence on the verdict."). Where a defendant "opens the door" or "invites error," there can be no reversible error. *Eagle*, 515 F.3d at 801.

Jeffery White and White Communications argue that the district court erred in admitting Exhibits G and H, which contain e-mail chains between AT&T and Synergies's employees about the explicit text message incident. The AT&T employees from those email chains did not testify at trial. Jeffery White and White

Communications contend that the e-mail chain contains hearsay within hearsay, and, even if the "outer" hearsay fits under the business records exception to the hearsay rule, the "inner" hearsay (the information in the e-mail chain) lacks foundation.

We conclude that the district court did not commit reversible error in admitting some alleged hearsay evidence because it was not offered for the truth of the matter asserted but instead for the purpose of showing the effect on Synergies's leadership. It is well settled that a statement offered to show its effect on the listener is not hearsay. *United States v. Beckman*, 787 F.3d 466, 484 (8th Cir. 2015) (quoting *United States v. Wright*, 739 F.3d 1160, 1170 (8th Cir. 2014)). Synergies utilized Exhibits G and H to demonstrate the e-mail chain's impact on its decision to terminate Jeffery White for cause. On that basis alone, the district court was within its discretion to admit the exhibits into evidence.[1]

Jeffery White and White Communications also argue that the district court allowed inadmissible hearsay evidence to be admitted in the form of testimony from Synergies employees Roger Hope and Jason Smith, regarding conversations with AT&T about Jeffery White's text message. They also argue that even if it fit, its prejudice outweighed its probative value, and thus should have been excluded under Rule 403. We disagree on both counts.

As discussed, a statement offered to show its impact on the listener is not hearsay. *United States v. Malik*, 345 F.3d 999, 1001 (8th Cir. 2003) ("When the out-of-court statement has relevance when we only consider the effect it had on those who heard (or read) it—not whether the statement was true or not, but just its effect on those who heard it—then the statement is not hearsay."). The district court held that Hope and Smith's testimony was admissible as evidence of Synergies's reputational harm.

---

[1]We need not decide whether the "outer hearsay" of the e-mail chain was also admissible under the business records exception to the hearsay rule. Fed. R. Evid. 803(6). The parties do not dispute that this portion of the e-mail chain meets that exception.

Hope's testimony demonstrates Exhibit G was introduced solely to show the e-mail chain's effect on Hope. Hope testified that he focused on the seniority of the participants in the e-mail chain addressing the investigation of the customer complaint, and that he became concerned because he thought the situation would lead to AT&T cancelling Synergies's contract. Similarly, Smith's testimony regarding his conversation with an AT&T vendor manager focused on the actions Smith took after speaking with the AT&T vendor manager. Thus, we conclude that the district court did not abuse its discretion in admitting Hope and Smith's testimony for non-hearsay purposes.

## C. Motions for New Trial

Finally, we consider whether the district court erred in denying the motions for a new trial based on (1) insufficient evidence to support Jeffery White's for-cause termination, and (2) an inadequate damages award on White Communications's breach of implied contract claim. "We review the denial of a motion for a new trial for a 'clear' abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013) (citation omitted). A district court's denial of a motion for a new trial on the basis of the verdict being against the weight of the evidence "is virtually unassailable." *Batiste-Davis*, 526 F.3d at 381. "A new trial should be granted only if the evidence weighs heavily against the verdict." *Hallmark,* 703 F.3d at 462 (citation omitted). "When determining if a damage[s] award arising from a state-law claim is excessive, state case law guides our inquiry." *Id.* (citation omitted).

We affirm the district court's decision denying Jeffery White's motion for a new trial. We conclude that there is more than sufficient evidence to support finding in favor of Synergies on the breach of contract claim. The evidence of the explicit text message, Synergies's leadership's testimony regarding a perceived threat to its relationship with AT&T, Synergies's leadership's testimony regarding the shrinking of its territory under its contract with AT&T, and the document evidence of AT&T

requesting Jeffery White's removal provide more than sufficient evidence to support the jury's verdict in favor of Synergies on the breach of contract claim. Accordingly, we affirm the district court's denial of Jeffery White's request for a new trial.

Separately, the jury found that White Communications should recover $391,680 for its breach of implied contract claim. White Communications argues the jury was required to craft an award of expectation damages in an amount that would have placed White Communications "in as good a position as . . . if the contract had been performed." White Communications asked for and thought it should have received approximately nine million dollars to account for a 4.5% share of Synergies's gross revenues on an annual basis.

Under Iowa law, "[t]he amount of damages awarded is a function of the jury, not the court." *Schooley v. Orkin Extermination, Co.*, 502 F.3d 759, 768 (8th Cir. 2007); *Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 859 (8th Cir. 2006) ("The determination of damages is traditionally a jury function. A jury's assessment of damages should be disturbed 'only for the most compelling reasons.'" (citation omitted)). A jury's verdict should not be set aside or altered unless it "(1) is flagrantly excessive or inadequate, (2) is so out of reason as to shock the conscience or sense of justice, (3) raises a presumption it is the result of passion, prejudice, or other ulterior motive, or (4) is lacking in evidentiary support." *Schooley*, 502 F.3d at 768 (cleaned up). For Iowa courts, "[t]he key question is whether . . . the verdict effects substantial justice between the parties.[]" *Niemiec*, 449 F.3d at 859 (citation omitted).

The jury's damages award does not shock the conscience or appear to be the result of prejudice. When, as here, a verdict form for an Iowa contract claim asks only for a total amount (rather than an itemized amount), it is impossible for us to determine how the jury calculated its award. Because Iowa law heavily favors allowing the jury to weigh the evidence and determine the value of White Communications's claim, we will not disturb the jury's award absent compelling

evidence to the contrary.  Accordingly, we affirm the district court's order denying White Communications's motion for a new trial on the basis of damages.[2]

The judgment of the district court is affirmed.

_____

---

[2]We are troubled by the serious but unanswered question of whether the legal distinction between White Communications, LLC and Jeffery White as an individual has been disregarded.  The district court order denying White Communications's motion for a new trial noted the glaring inconsistency in the testimony as to whether the ongoing payments from Synergies were to be made to Jeffery White or White Communications, LLC.  Jeffery White's parents, who are not parties to this litigation, owned between 50% and 70% of White Communications before the assumption agreement, and it is unclear how their interest could be wiped out by the terms of the Operating Agreement.  This appears, however, to be a question outside the scope of this appeal.