# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2333

_____

John Gruttemeyer

*Plaintiff - Appellee*

v.

Transit Authority, of the City of Omaha, a Nebraska corporation, doing business as
Metro Area Transit

*Defendant - Appellant*

Transportation Workers Union of America, Local 223

*Defendant*

_____

No. 20-3576

_____

John Gruttemeyer

*Plaintiff - Appellee*

v.

Transit Authority, of the City of Omaha, a Nebraska corporation, doing business as
Metro Area Transit

*Defendant - Appellant*

Transportation Workers Union of America, Local 223

*Defendant*

————————

Appeal from United States District Court
for the District of Nebraska - Omaha

————————

Submitted: November 16, 2021
Filed: April 14, 2022

————————

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

————————

KELLY, Circuit Judge.

John Gruttemeyer claimed his former employer, the Transit Authority of the City of Omaha (Metro), discriminated against him based on disability and retaliated against him for protected activity when it terminated him in 2016. A jury found in Gruttemeyer's favor under the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) and awarded damages. After trial, the district court[1] denied Metro's motion for judgment as a matter of law or a new trial and granted Gruttemeyer's motion for attorney's fees. Metro appeals and, having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

John Gruttemeyer began working for Metro in 2011 as a full-time bus operator and transferred to a position as a bus fueler and washer in May 2015. Gruttemeyer was a member of the Transportation Workers Union of America, AFL-CIO, Local 223 (the Union) for the duration of his employment with Metro. He was elected vice

———

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

president of the Union in November 2015 and served in that role until March 1, 2016. Gruttemeyer had previously worked for the Omaha Fire Department for 23 years. He took a one-year medical leave because of stress and depression and then retired from the fire department with a disability pension in July 2010.

In a letter dated July 6, 2016, Metro fired Gruttemeyer. Gruttemeyer filed suit in federal district court alleging that Metro terminated his employment because of his disability—bipolar disorder, anxiety disorder, and depression—and in retaliation for Gruttemeyer helping a co-worker who claimed age discrimination by Metro.[2] Gruttemeyer brought a federal disability discrimination claim under the ADA, 42 U.S.C. § 12112, and a retaliation claim under the ADEA, 29 U.S.C. § 623(d). He also brought state law claims for retaliation and disability discrimination under the Nebraska Fair Employment Practices Act, Neb. Reb. Stat. § 48-1104, that were coextensive with the corresponding federal claims. The district court denied Metro's motion for summary judgment, and the case proceeded to trial.[3]

The jury returned a verdict in Gruttemeyer's favor on his disability discrimination claim and his retaliation claim. The jury awarded damages of $114,540.94 in lost wages and benefits and $25,000 in other damages on the ADA claim and did not award any additional damages for the ADEA claim. Metro appeals.

---

[2]After the Union declined to arbitrate Gruttemeyer's termination on his behalf, Gruttemeyer filed charges of discrimination and retaliation with the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC) before bringing his federal case. The EEOC adopted the findings from the NEOC investigation and issued a right to sue letter on January 8, 2018. Gruttemeyer's exhaustion of the administrative process is not at issue on appeal.

[3]Gruttemeyer named both Metro and the Union as defendants. On December 30, 2019, the district court granted the Union's motion for summary judgment. The Union's dismissal from the case is not at issue on appeal.

## II.

First, Metro appeals two evidentiary rulings. We review the district court's decision to admit or exclude evidence for abuse of discretion, Bady v. Murphy-Kjos, 628 F.3d 1000, 1002–03 (8th Cir. 2011), including decisions concerning the admission of expert testimony, Bradshaw v. FFE Transp. Servs. Inc., 715 F.3d 1104, 1107 (8th Cir. 2013). "A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010) (quoting U.S. Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 689–90 (8th Cir. 2009)).

## A.

The first evidentiary ruling at issue involves the testimony of Francene Buda Dardon. On July 25, 2019, Gruttemeyer disclosed "Francene Buda Dardon, LMHP," as a potential witness, identifying her as his "Counselor/Therapist" and indicating she would "testify regarding treatment, observation and diagnosis of Mr. Gruttemeyer's disability." Gruttemeyer had also identified Buda Dardon in response to Metro's interrogatories, and during his deposition Gruttemeyer identified Buda Dardon as his therapist who diagnosed him.

On February 6, 2020, Metro sought to exclude or limit Buda Dardon's testimony. Metro argued Buda Dardon's position as a Licensed Mental Health Practitioner (LMHP) did not allow her to diagnose major mental illness because, under Nebraska law, only a Licensed Independent Mental Health Professional (LIMHP) is qualified to independently diagnose major mental illness, while an LMHP is not. See Neb. Stat. §§ 38-2113(2), 38-2116. When Metro took Buda Dardon's trial deposition on February 20, however, it discovered that she was in fact an LIMHP and therefore qualified to testify about Gruttemeyer's diagnoses. The district court denied Metro's motion to exclude Buda Dardon's testimony.

-4-

At trial, Metro again objected to Gruttemeyer presenting Buda Dardon's testimony. First, Metro argued that her testimony was expert testimony, yet Gruttemeyer had not disclosed her as an expert. Second, Metro argued it was a prejudicial unfair surprise that it only learned Buda Dardon was an LIMHP at her trial deposition. Metro asserted prejudice because it was prepared to depose Buda-Dardon as an LMHP, expecting an admission that she could not diagnose Gruttemeyer. The district court overruled the objection, finding Buda Dardon was not testifying as an expert witness and that Metro had not shown prejudice justifying exclusion of her testimony.

Under Rule 26, non-retained experts, including treating healthcare providers such as Buda Dardon, are subject to less stringent disclosure requirements than a retained expert. Vanderberg v. Petco Animal Supplies Stores, Inc., 906 F.3d 698, 702 (8th Cir. 2018). "[P]arties must disclose the identity of non-retained experts who may testify at trial and disclose 'the subject matter on which the witness is expected to present' expert opinion testimony and 'a summary of the facts and opinions to which the witness is expected to testify.'" Id. (quoting Fed. R. Civ. P. 26(a)(2)(C)). If a treating physician will testify about matters outside the realm of treatment such as causation of a condition, however, disclosure requirements are triggered. See id. at 706 (citing Brooks v. Union Pac. R.R. Co., 620 F.3d 896, 899 (8th Cir. 2010)).

When Gruttemeyer identified Buda Dardon as a potential witness, he indicated she would testify "regarding treatment, observation and diagnosis of Mr. Gruttemeyer's disability." Gruttemeyer never suggested that she would testify about causation of his disability or otherwise reach topics outside his treatment, and Metro acknowledged as much at trial. The district court did not abuse its discretion in admitting Buda Dardon's testimony without expert disclosure because she testified as a treating practitioner only.

As to Metro's second objection, it is undisputed that Gruttemeyer incorrectly disclosed Buda Dardon's professional qualifications and that Metro therefore did not

-5-

learn that she was an LIMHP until the trial deposition. A district court "has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" when a party fails to provide information or identify a witness in compliance with Rule 26(a). Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). A court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." Id.

Here, the contents of Buda Dardon's testimony—treatment, observation, and diagnosis of Gruttemeyer's mental illnesses—were disclosed at the beginning of the case and remained unchanged. Gruttemeyer provided what he thought was accurate information at the time of initial disclosures but failed to recognize that under Nebraska law, Buda Dardon would not have been able to diagnose mental illness. Metro made no effort to verify its defense theory before taking her trial deposition, despite indicating that it would obtain Buda Dardon's records and despite Gruttemeyer providing contact information and signing a release. Further, Metro could have requested a continuance upon learning of Buda Dardon's true qualifications but instead chose to take the risk of proceeding with the trial deposition and to trial. The district court weighed these particular circumstances as required, see id., and decided to admit the testimony. Given that exclusion of evidence "is a harsh penalty and should be used sparingly," id. (quoting ELCA Enters. v. Sisco Equip. Rental & Sales, 53 F.3d 186, 190 (8th Cir. 1995)), we find no abuse of discretion in the district court's decision.

B.

Metro also sought to exclude evidence of Gruttemeyer's diagnosis of major depressive disorder because he did not explicitly include that condition as a separate disability in his complaint; the complaint identified only bipolar disorder. The district court denied Metro's request because Metro was on notice through discovery and depositions that Gruttemeyer's claim involved several interrelated diagnoses.

Metro maintains the district court abused its discretion by improperly allowing Gruttemeyer to change the factual premise of his claim and argues that we should reverse in reliance on EEOC v. Lee's Log Cabin, Inc., 546 F.3d 438 (7th Cir. 2008).

In Lee's Log Cabin, the Seventh Circuit affirmed a district court's decision to prevent the EEOC from substituting AIDS for HIV as the factual basis of an ADA claim. 546 F.3d 438, 440 (7th Cir. 2008). The district court decided, based on the Supreme Court's decision in Bragdon v. Abbott, 524 U.S. 624, 633–37 (1998), that AIDS and HIV were not synonymous for purposes of the ADA claim. Lee's Log Cabin, 546 F.3d at 442. The Seventh Circuit found that the district court did not abuse its discretion because, "[g]iven the symptomatic variances" between HIV and AIDS, the ADA claimant's diagnosis at the time of the alleged discrimination was highly relevant to the factual foundation of the claim. Id. at 443–44. Here, by contrast, the record contains evidence about Gruttemeyer's history of major depressive disorder, anxiety, and bipolar disorder from long before the eve of trial, including in Gruttemeyer's deposition testimony and documents in Metro's possession. Moreover, this evidence suggests that the disorders are interrelated and their inclusion was unlikely to fundamentally change the factual basis of the case. Metro was on notice of Gruttemeyer's interrelated diagnoses, and the district court did not abuse its discretion by allowing the evidence.[4]

III.

Next, Metro appeals the district court's denial of its motion for judgment as a matter of law or a new trial on both the ADA claim and the ADEA claim. We review de novo the denial of a motion for judgment as a matter of law, reversing only if "a

---

[4]Additionally, the district court relied on its pretrial order in denying Metro's motion in limine, which framed the ADA claim in broad terms, and "[i]t is well settled that the pre-trial order supersedes the pleadings and establishes the issues to be considered at trial." Lane v. Geiger Berger Assocs., P.C., 608 F.2d 1148, 1152 (8th Cir. 1979).

reasonable jury would not have a legally sufficient evidentiary basis" to support the verdict. Masters v. City of Independence, 998 F.3d 827, 835 (8th Cir. 2021) (quoting Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir. 2012)). Review is "highly deferential" to the jury verdict, with all reasonable inferences drawn in favor of the verdict. Id. If, however, the record "contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate." Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 422 (8th Cir. 2007) (quotation omitted).[5]

## A.

Under the ADA, employers may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The jury was instructed that Gruttemeyer needed to prove four factors by a preponderance of the evidence to prevail on his ADA claim: (1) he had a disability; (2) such disability substantially limited a major life activity; (3) Metro discharged Gruttemeyer from employment; and (4) Metro knew of Gruttemeyer's disability, or record of disability, and it was a motivating factor in Metro's decision to terminate him.[6] The jury was further

---

[5]Metro included a motion for a new trial in the alternative to its motion for judgment as a matter of law. We review denial of a motion for a new trial for clear abuse of discretion. White Commc'ns, LLC v. Synergies3 Tec Servs., LLC, 4 F.4th 606, 613 (8th Cir. 2021). A new trial should be granted if "necessary to prevent a miscarriage of justice." Id. (quoting Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013)). Denial of a motion for a new trial where the moving party argued the evidence was insufficient to support the verdict is "virtually unassailable" on appeal, and should be reversed "only if the evidence weighs heavily against the verdict." Id. at 613–14 (quotations and citations omitted); see also Keenan v. Comput. Assocs. Int'l Inc., 13 F.3d 1266, 1268–69 (8th Cir. 1994). On the merits, Metro argues for a new trial based only on the weight of the evidence. As explained below, the evidence does not "weigh heavily" against the verdict on either the ADA or ADEA claim, and we therefore affirm denial of Metro's motion for a new trial.

[6]The well-known McDonnell Douglas burden-shifting framework plays no role at trial; rather, the jury must find simply that disability was a motivating factor behind an adverse employment action. See Weber v. Strippit, Inc., 186 F.3d 907,

instructed that if it found in favor of Gruttemeyer on his ADA claim but also found that Metro's decision to terminate him was motivated by both discriminatory and lawful reasons, it then needed to decide whether Metro would have made the same decision absent Gruttemeyer's disability or record of disability. See Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995). Here, the jury concluded Metro would not have made the same decision absent Gruttemeyer's disability and awarded damages. On appeal, Metro challenges the sufficiency of the evidence with respect to the fourth element of Gruttemeyer's ADA claim—that disability was a motivating factor in his termination—and the jury's finding that Metro would not have terminated Gruttemeyer but for his disability.

First, Metro contends there was no evidence that Metro management, specifically Curt Simon, Metro's Executive Director and ultimate decision-maker, was aware of Gruttemeyer's disability or record of disability. We disagree. The jury heard evidence that John Boncordo, Metro bus driver and president of the Union, spread rumors on the job about Gruttemeyer's mental health, calling him "nuts," "crazy," and "unstable." In February 2016, Gruttemeyer complained to Simon about Boncordo and asked whether he knew of Boncordo's disparaging statements about his mental health. Simon stated he did.

In addition, taking the evidence in the light most favorable to the verdict, Metro management would have been aware of Gruttemeyer's disability through paperwork about his disability pension. As part of Gruttemeyer's pension review, the City of Omaha sent Metro an "Employer Work Questionnaire" in 2013 and again in 2016. Both questionnaires notified Metro of Gruttemeyer's disability pension for

---

918 (8th Cir. 1999) ("We have previously rejected the claim that a district court should instruct the jury on the McDonnell Douglas burden-shifting framework."); Lang v. Star Herald, 107 F.3d 1308, 1312 (8th Cir. 1997) ("Reference to [the McDonnell Douglas burden-shifting] analysis is not necessary . . . or even recommended. The burden-shifting analysis is simply a procedural framework that progressively focuses the inquiry on the question of whether a material issue of discrimination in fact exists.") (citations omitted)). To the extent Metro bases its post-trial arguments on this burden-shifting analysis, they are unavailing.

"major depressive and generalized anxiety disorders" and requested information about the nature of Gruttemeyer's current job at Metro. Also, in January 2016, Metro Safety Director David Jameson conducted a review of Gruttemeyer's medical forms dating back to when Gruttemeyer was hired in 2011, including a 2011 medical certification showing that Gruttemeyer was taking medication for depression. After Jameson's review, Metro required Gruttemeyer to submit a fitness for duty examination. In light of the evidence presented at trial, a reasonable jury could have found that Metro knew of Gruttemeyer's disability.

Next, Metro argues there was insufficient evidence to support the conclusion that its decision to terminate Gruttemeyer was motivated by his disability. Rather, Metro asserts, the evidence showed he was terminated for a legitimate, non-discriminatory reason: violations of Metro's policies. First, Metro points to an incident on February 22, 2016, when Gruttemeyer and Boncordo's contentious relationship culminated in a heated argument. According to Boncordo, Gruttemeyer physically threatened him; Gruttemeyer said they only exchanged words. Video footage of the incident showed no physical contact. Gruttemeyer was suspended without pay for 106 days, during which time no one contacted him for a statement about the incident. When he refused to sign a "last chance agreement"—which would have allowed Gruttemeyer to return to work with certain conditions and penalties—Jameson recommended to Simon that Gruttemeyer be terminated. Metro asserts Gruttemeyer's participation in the incident with Boncordo was a policy violation.

Second, Metro asserts Gruttemeyer was dishonest at his pretermination hearing—another violation of Metro policy. At the hearing, Gruttemeyer first admitted having a verbal argument with Boncordo on February 22 but denied calling him names, and then denied he was involved in the incident at all. Metro maintains that the verdict was clearly against the weight of the evidence because Gruttemeyer's dishonesty at the pretermination hearing was indisputably true based on an audio recording of the hearing presented to the jury.

-10-

For his part, Gruttemeyer testified that he was being sarcastic, not dishonest, at the pretermination hearing when he denied being involved in the February 22 incident. The jury also heard evidence about Boncordo spreading rumors around the workplace about Gruttemeyer's mental health, as well as about Boncordo's influence with Metro management as president of the Union. Further, Gruttemeyer presented evidence that other Metro employees without disabilities engaged in threatening behavior toward co-workers that also violated Metro policies but they were not terminated.

Taken together, the evidence supports a reasonable inference that Gruttemeyer's disability was a motivating factor in Metro terminating him. Metro is right that violation of a company policy is a legitimate, non-discriminatory rationale for terminating an employee. Twymon v. Wells Fargo & Co., 462 F.3d 925, 935 (8th Cir. 2006). But even if it was unreasonable for the jury to accept Gruttemeyer's characterization of his statements during the pretermination hearing, that does not necessarily mean the evidence presented at trial fails to support the verdict. The jury needed only to conclude that disability was one motivating factor for termination, see Pedigo, 60 F.3d at 1301 ("An employee is entitled to some relief if he or she proves that his or her disability was a 'motivating factor' in the decision made, 'even though other factors also motivated' the employer's decision." (quoting 42 U.S.C. § 2000e-2(m))), and that Metro would not have discharged Gruttemeyer but for his disability. And though Metro argues that the altercations involving other employees were not sufficiently similar to support a conclusion that it terminated Gruttemeyer because of his disability, it was for the jury to determine whether the lack of consequences for others' policy violations was indirect evidence that Metro was targeting Gruttemeyer for some other reason: his disability.

At minimum, the jury heard evidence about Boncordo's animosity toward Gruttemeyer and about Boncordo's close relationship with Metro management. Evidence of discriminatory animus among individuals with influence over decisionmaking can be sufficient for a reasonable jury to conclude discrimination was a motivating factor. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135

-11-

(8th Cir. 1999) ("[T]he ultimate question is whether the plaintiff presents evidence of conduct or statements by persons involved in the employer's decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that that attitude was a motivating factor in the employer's decision to fire the plaintiff." (cleaned up) (quotation omitted)).

All told, viewing the evidence in the light most favorable to the jury's verdict, the record reasonably supports a conclusion that Gruttemeyer's disability or record of disability was one motivating factor in Metro's decision to terminate him, and that Metro would not have made the same decision absent his disability or record of disability. Simply put, the jury heard conflicting testimony and found Gruttemeyer's evidence more persuasive; we will not reweigh the evidence on appeal. We affirm the district court's denial of Metro's motion for judgment as a matter of law with respect to the ADA claim.

B.

Gruttemeyer's ADEA claim was based on his advocacy on behalf of a co-worker, Jim Miller. Gruttemeyer submitted a complaint to Curt Simon on behalf of Miller when Metro changed Miller's hours after Miller filed an age discrimination complaint. The ADEA provides that it is unlawful for an employer to discriminate against any of its employees "because such individual . . . has opposed any practice made unlawful" by the ADEA. Kempcke v. Monsanto, Co., 132 F.3d 442, 445 (8th Cir. 1998) (quoting 29 U.S.C. § 623(d)). To prevail on his retaliation claim, Gruttemeyer needed to prove that he engaged in ADEA-protected activity and that the protected activity was a but-for cause of an adverse employment action. See id.; Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Metro argues no reasonable jury could conclude that Gruttemeyer engaged in any protected activity that was a but-for cause of his termination.

The jury heard evidence that Miller had openly complained at Metro that his hours were changed in retaliation for an age discrimination complaint. At his

-12-

pretermination hearing, Gruttemeyer told Metro management that he felt he was being retaliated against for his association with and support of Miller. Viewing the evidence in Gruttemeyer's favor, the jury could have reasonably concluded that Gruttemeyer engaged in protected activity by opposing employer conduct—changing Miller's hours—that he believed violated the ADEA. See Kempcke, 132 F.3d at 445 ("Protected activity includes opposing any practice made unlawful by the ADEA, § 623(d). Employer conduct that an employee opposes need not in fact be unlawful. Rather, the employee must demonstrate a good faith, reasonable belief that the underlying challenged action violated the law." (cleaned up) (quotation and citation omitted)).

Further, the jury could have reasonably inferred that Simon knew of Miller's age discrimination allegations and, by extension, knew Gruttemeyer's advocacy on Miller's behalf would be protected conduct as well, and that Gruttemeyer's termination soon after was motivated, in part, by Gruttemeyer's opposition. Or the jury could have inferred that Gruttemeyer's statements about Miller at the pretermination hearing amounted to a motivating factor for Metro going through with the termination. Either way, the record contains more proof than mere speculation in support of the verdict, and we affirm the district court's denial of Metro's motion for judgment as a matter of law with respect to the ADEA claim.

IV.

We now turn to the district court's award of attorney's fees. Under the ADA, the district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205. We review legal questions related to the awarding of attorney's fees de novo and review the amount of fees and costs awarded for abuse of discretion. Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir. 2008). To determine reasonable attorney's fees, the district court must first calculate a lodestar and then consider whether the lodestar amount should be reduced, based on appropriate considerations. Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983).

-13-

## A.

Metro first argues that the district court should not have awarded fees for the claims against the Union because they were distinct from the claims on which Gruttemeyer prevailed. Attorney's fees should not be awarded "for hours spent pursuing unsuccessful claims that are distinct in all respects from the prevailing claims." Winter v. Cerro Gordo Cnty. Conservation Bd., 925 F.2d 1069, 1074 (8th Cir. 1991) (quotation omitted). Claims are related, rather than distinct, if they are based on a common core of facts or on related legal theories. Hensley, 461 U.S. at 435.

Metro does not dispute that the claims against Metro and the Union arose from a common set of facts. Rather, it argues that because Metro and the Union were separate defendants, Gruttemeyer can recover no fees for work done on the claims against the Union, all of which were dismissed. But that fact alone is insufficient to show the claims were not related. See id. at 434–35 (focus is on whether facts and legal theories are related, not whether parties were the same or separate; facts and legal theories are sometimes unrelated against the same defendants); see also McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) ("Each of McCown's claims, though brought on the basis of different legal theories against different defendants, arose from a common core of facts, namely, his arrest on June 2, 2004. Therefore, the district court did not abuse its discretion when it treated all the claims, successful and unsuccessful, as arising out of a common core of facts."). Here, the district court found that the claims against the Union were related to and intertwined with the claims against Metro since the same evidence and witnesses would have been required against both defendants and the same damages were at issue. The district court was in the best position to assess whether the previously dismissed claims against the Union were sufficiently related to justify a full award of fees, and we find no abuse of discretion in its conclusion.

B.

Gruttemeyer also requested fees for time spent pursuing ADA charges against Metro through the NEOC prior to commencing this case. Whether a statute permits awarding attorney's fees incurred during administrative proceedings is a legal question we review de novo. See Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1010 (8th Cir. 2004) (reviewing whether ERISA permits an award of attorney's fees for administrative proceedings de novo).

Generally, attorney work outside the context of traditional judicial litigation may still garner an award of fees if the work was useful and of a type ordinarily necessary to secure the final result obtained from the litigation, even if the administrative proceedings were not required for exhaustion. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 560–61 (1986). Citing Parke, Metro argues that attorney's fees are not available for time Gruttemeyer spent in administrative proceedings. But Metro overlooks the fact that the ADA explicitly provides for an award of attorney's fees for administrative proceedings commenced pursuant to the ADA. See 42 U.S.C. § 12205 ("In any action *or administrative proceeding* commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." (emphasis added)). And Parke involved attorney's fees for administrative proceedings under ERISA, which unlike the ADA does not include administrative proceedings in its fee-shifting provision. See Parke, 368 F.3d at 1010 ("In *any action* under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee." (emphasis added) (quoting 29 U.S.C. § 1132(g)(1))). Under the plain language of the ADA, the district court did not err in awarding attorney's fees for time spent on the administrative proceedings.

C.

Setting aside the legal questions, Metro also asks us to reduce the attorney's fee awarded because time entries were block billed or vague and because time spent

-15-

on some tasks was excessive or included clerical work charged at attorney rates. Metro is correct that a reduction in attorney's fees may be appropriate when recordkeeping is poor or block billing is submitted, Ryan Data Exch., Ltd. v. Graco, Inc., 913 F.3d 726, 736 (8th Cir. 2019), and we "may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used," L.B. ex rel. A.J. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995). Additionally, purely clerical tasks should not be billed at paralegal or attorney rates, regardless of who performed such tasks. See, e.g., Missouri v. Agyei ex rel. Jenkins, 491 U.S. 274, 288 n.10 (1989).

Based on its knowledge of the case and the legal market, the district court concluded the number of hours expended in discovery and trial was reasonable, and the time entries were sufficiently specific and represented appropriate uses of an attorney's time. The district court declined to reduce hours for duplicative billing. Metro essentially asserts that Gruttemeyer's attorneys spent too much time on the case, but has offered no support to show the billing was not in line with the norms in the market or that the fee award is more than is to be expected in this type of case. After reviewing the documents submitted by Gruttemeyer, we are not convinced the district court abused its discretion in awarding the full amount of requested fees, and we will not disturb the district court's judgment.

V.

For the foregoing reasons, we affirm the district court's denial of Metro's motion for judgment as a matter of law or a new trial and affirm the award of attorney's fees in full.

_____